GLENN v. WHITNEY et ux.

No. 7280.   Decided August 19, 1949.   (209 P. 2d 257.)

See 11 C. J. S., Boundaries, sec. 78. Fences as boundaries, see note, 115 A. L. R. 524. See, also, 8 Am. Jur. 747.

*Bullen & Bell,* Logan, for appellant.

*Walter G. Mann,* Brigham City, for respondents.

LATIMER, Justice.

This action was brought to determine the boundary line separating plaintiff's land from defendants' adjoining property. Plaintiff's action is a suit to quiet title to a strip of land eighty rods long and approximately 180 feet wide at one end and 192 feet wide at the other. This land is presently occupied by defendants. In their answer the defendants admit they claim to be rightful owners of the land in dispute by alleging that an old fence establishes the true division line between the properties. The trial court held that the fence line, established in 1919, had been kept and maintained in its original position since that date and had been mutually recognized by the parties as the boundary line separating their lands. The court concluded that by long acquiescence, the parties had established the fence line as the true boundary line. We refer to the parties as they appeared below.

Plaintiff's claim that the fence line is not the boundary is founded upon a survey made in 1947, by an engineer hired by him to determine the location of the boundary, which indicated, according to the testimony of the engineer, that the strip of land here involved belongs to the plaintiff. That survey was, in part, based upon previous government surveys. Plaintiff further contends that the fence line has not become the true boundary by acquiescence of the parties because the location of the true boundary, as shown by the survey, has never been in dispute, or uncertain as required by law before it may be said that the parties had acquiesced in a fence erected to resolve their differences. Defendants, on the other hand, claim first, that the parties have acquiesced in a fence line as being the true boundary line separating their lands for more than twenty years and that plaintiff may not now be heard to contend otherwise, and second, that the survey was irregularly made and for that reason is not competent to establish the original dividing line.

To enable the reader to more readily follow the facts surrounding the question as to whether the fence line has be-

come the established boundary line separating the litigants' properties we have included a map of the sections involved.

In the year 1918, A. W. Bishop purchased the south half of section 19. That property together with part of the north half of section 19 is now owned by the plaintiff. At the time Mr. Bishop purchased the south half of the section, his land was fenced on the east but not on the north. In 1919, he extended his fence line north a quarter of a mile and that extension established the fence line now in dispute. He testified that in so extending the fence, he did not attempt to find any government survey monuments nor did he attempt to establish the fence line along the true boundary line in any other way. Likewise, he did not construct the

fence for the purpose of establishing a boundary line between the properties here involved as he did not and never has owned either one. He claimed that his sole purpose for extending the fence northward was to prevent the escape of his livestock to the east. At the time the fence was constructed, the land on either side was not under cultivation. The evidence as to when defendants began cultivating up to the fence line is somewhat uncertain. Defendant Whitney and his father fix the time as 1934 or 1935 that all tillable land adjoining the fence line on their side was cultivated but indicated that some of it had been cultivated for many years prior to their purchase in 1927. They have not attempted to locate the true boundary line according to the government survey, but always assumed they owned up to the fence line.

The cases and text writers in stating the general rule announce the principle that the question as to whether an established fence line has become the true boundary line separating two adjoining tracts of land is one of fact and the court must evaluate the facts in each case. Before doing so, we find it necessary to define the meaning of certain terms in view of the fact that there seems to be some confusion in the minds of the litigants as to what elements are necessary to establish a boundary line in a suit of this character. If it was not clear before the case of *Tripp* v. *Bagley*, 74 Utah 57, 276 P. 912, 69 A. L. R. 1417, it was expressly recognized there and in all Utah cases in point handed down subsequent to it, see *Home Owners' Loan Corp.* v. *Dudley*, 105 Utah 208, 141 P. 2d 160; and *Smith* v. *Nelson*, 114 Utah 51, 197 P. 2d 132, that there must be some uncertainty or a dispute between adjoining owners as to the location of the true boundary line before a fence which they subsequently erect to resolve their differences and in which they acquiesce for a long period of time, may be taken as the agreed boundary line. Using the terms "uncertainty" and "dispute" loosely, we might say that the parties here were uncertain as to the location of the boundary line inasmuch as neither of them had attempted to locate it prior

to the survey made by plaintiff. This, however, is not "uncertainty" as this term was meant to be used in this connection for as is said in Thompson on Real Property, section 3309:

"If an owner ignorant of his true boundaries by mistake acquiesces in a line as a boundary, he and his grantees are not thereby precluded from afterwards claiming to the true line, and it has been held that one who has no knowledge that the adjoining owner has encroached upon his land cannot be held to have lost his rights by acquiescence in such occupancy no matter how long continued, for one cannot waive or acquiesce in a wrong while ignorant that it has been committed, especially where each party has equal means of ascertaining the correct line."

Thus, lack of knowledge as to the location of the true boundary is not synonymous with uncertainty. This being true, it cannot be said that the parties here were uncertain as to the location of the true boundary line, for there is nothing in the record before us to indicate that either of them had any idea as to the true location of the boundary line apart from an assumption that some existing fences separating the lands of other owners in the area might mark the section lines.

Furthermore, the fence was not erected to settle any uncertainty or dispute between the litigants or their predecessors in interest for according to the undisputed testimony of Mr. Bishop, he erected the fence merely to prevent the escape of his livestock to the east, and he did not attempt to erect a boundary line between the properties now involved or to settle any doubt or uncertainty as to the location of the true boundary line. According to defendant and his father, from whom defendant deraigns his title, they had merely assumed that the fence which existed at the time defendant's father purchased the property, was on the boundary line. The theory under which a boundary line is established by long acquiescence along an existing fence line is founded on the doctrine that the parties erect the fence to settle some doubt or uncertainty which they

may have as to the location of the true boundary, and they compromise their differences by agreeing to accept the fence line as the limiting line of their respective lands. The mere fact that a fence happens to be put up and neither party does anything about it for a long period of time will not establish it as the true boundary. *Peterson* v. *Johnson,* 84 Utah 89, 34 P. 2d 697; *Tripp* v. *Bagley,* supra. We conclude that the defendants failed to establish title to the strip of land in question on the theory that the fence line was the true boundary line by erection of the fence and long acquiescence of the parties in its location.

The single remaining question to be determined is whether the court erred in failing to find that plaintiff had established his ownership of the strip of land in question. Plaintiff, on the 29th day of May, 1947, hired W. H. Griffiths, county surveyor for Box Elder County, to make a partial re-survey of Township 14 North Range 5 West in order to locate the true line separating the south half of the north half of section 19 from the south half of the north half of section 20, the boundary line here in dispute. Prior to making that re-survey, Mr. Griffiths obtained the field notes of two government surveys of Township 14. One set were the notes of one Troskolawski who had made the original government survey in 1856. A second set had been made in the year 1887, by one Fitzhugh, also a government surveyor. The notes of each were unusual in that both Troskolawski and Fitzhugh ran their surveys of Township 14 from the west boundary line eastward for the two westernmost tiers of sections and from the east boundary of Township 14 westward for the four remaining tiers of sections. The usual practice, of course, is to run the survey of all sections from the east boundary line westward.

Mr. Griffiths commenced his survey by attempting to locate the government monuments establishing the west township boundary line. The reason he gave for running his survey eastward from the west boundary rather than westward from the east boundary, which is the accepted

practice, was that this was the boundary from which sections 19 and 20 had been surveyed as shown by the notes of the government surveyors referred to above. Mr. Griffiths further testified that in 1930 he had surveyed the west boundary of this particular township and located the northwest corner monument, the southwest corner monument and also the northwest corner of section 19; that a fence line ran through these three points establishing the west boundary of the township; that although only one of these monuments was to be found when he commenced his survey in 1947, the fence line still existed in a straight line and in the same position as it was in 1930. He admitted, however, that he found no other government monuments. He found a county road, however, running north and south along the east boundaries of sections 20, 17, 20 and 32. He testified that the road was for all practical purposes parallel with the west boundary of the township, that the road had existed there of his own knowledge for about twenty years, and that upon inquiring of local landowners, he learned that the road was considered to be the boundary between the sections on either side of it. He thereupon measured the distances between the road and the west boundary of the township along the north and south lines of sections 19 and 20. He found the distance along the southern boundary of these two sections to be 10,629 feet and that the existing fence line divided that distance unequally giving defendant 5456 feet and plaintiff 5173 feet. Referring to the government notes he found that defendant was entitled to 5326 feet along this boundary and that plaintiff was entitled to 5276 feet. Finding that the total distance between the western boundary of the township and the county road on the east of section 20 was greater than the sum of the two distances called for in the government notes, Mr. Griffiths calculated that the parties were entitled to the distances referred to in the government notes plus a proportional division of the excess. He thereupon determined that plaintiff was entitled to 5310 feet and that defendant was entitled to 5320 feet. Without going into more detail concerning his further calculations,

it is sufficient to say that Mr. Griffiths followed the same method to determine where the boundary line should be located as it crossed the northern boundaries of the two sections.

Respondent contends the survey, as made, is legally insufficient for several reasons, the first of which being that under the law as announced in *Henrie* v. *Hyer*, 92 Utah 530, 70 P. 2d 154, 157, Mr. Griffiths was required to run his survey of all sections from the east boundary of the township westward and was not at liberty to run it eastward from the west boundary as to sections 19 and 20 as he did. The rule to be found in that case upon which respondent relies is as follows:

"Resort should be had, first, to the monuments placed at the various corners when the original government survey of the land was made, provided they are still in existence and can be identified, or can be relocated by the aid of any attainable data. But if this cannot be done and a survey becomes necessary, this must be made from the east, and not from the west, boundary line of the township."

It would appear that reason for the rule requiring a re-survey to be run from the east boundary westward is to establish uniformity in accordance with an established method of survey having been adopted by government surveyors. Such uniformity is desirable in order to preserve, as nearly as possible, the amount of land included within each government patent based upon a government survey. This being true, it is clear in this case, that the rights of the original purchasers of land in sections 19 and 20 were based upon a survey that commenced from the west boundary of the township. In addition, there was at least one monument on the west township line which could be indentified. Under circumstances such as these, to give effect to the purpose for which the rule contended for was devised, we hold that the survey of sections 19 and 20 made from the west boundary of the township to the east was proper.

While it is true, as urged by respondent, that because of the curvature of the earth, boundary lines of townships in the northern hemisphere converge slightly to the north and the shortage, if any, in a given township is to be taken up in the westernmost tier of sections, according to established practice, it appears that both government surveyors, in running their surveys of the township here involved took up their shortages where their surveys from the east and west met. Although the rights of the parties, through their predecessors in interest, became established according to an unusual method of surveying, the only way in which to preserve these rights is to follow the survey as originally made. The rule of *Henrie* v. *Hyer,* supra, is not in conflict with the principle here announced and Mr. Griffiths was not only authorized to commence his survey of sections 19 and 20 from the western boundary of the township, he was required to do so in order to preserve, if possible rights established with reference to the original government survey. *Washington Rock Co.* v. *Young,* 29 Utah 108, 80 P. 382, 110 Am. St. Rep. 666.

Respondent next complains that the county road was not established as the true eastern boundary of section 20 so that there is no assurance that the calculations made by Mr. Griffiths were correct. With this contention we agree. In this connection, Mr. Griffiths admitted he found no government monuments along the road. The reason he gave for adopting the road as the eastern boundary of section 20 was that according to his own knowledge, the road had existed in the same position for twenty years and that upon inquiring of landowners in the vicinity, he was informed by them that the road was on the section line.

Under the circumstances present in this case, we think the evidence insufficient to permit the parties to use the county road as the eastern boundary of section 20. It will be recalled that the government survey notes called for 5276 feet along the south boundary of section 19 and 5326 feet along in the south boundary of section

20. In measuring the distance between the west boundary of township 14 to the county road which Mr. Griffiths took to be the east boundary of section 20, he discovered the distance to be slightly in excess of the sum of the distances called for in the government surveys for sections 19 and 20. It is true that the excess was a very small amount—twenty-seven feet. However, we cannot say that the excess, slight as it may be, should be divided between sections 19 and 20 on the theory that the county road is the established eastern boundary of section 20. It is true, as appellant contends, that surveyors, in making re-surveys or in searching for or relocating lost or obliterated corners, may consider extrinsic and material evidence as well as field notes, *if there is doubt or uncertainty in the field notes,* in order to determine lost lines of an original survey. *Henrie* v. *Hyer,* supra. However, the rule has no application here, for the difficulty in locating the east boundary of section 20 does not lie in doubt or uncertainty in the field notes, but rather in the fact that the surveyor did not find monuments on the ground. Moreover, the evidence does not show that government monuments marking the north-south line running parallel to the road cannot be found. According to the government notes, the east boundary line of section 20 lies 10,602 feet east of the west township boundary and this point falls some twenty-seven feet west of the county road, according to the calculations made by Mr. Griffiths. The government notes clearly state the amount of land to which each of the parties before the court is entitled measured from the west boundary of the township. Before concluding there is an excess to be divided between the parties, the east boundary of section 20 should be located with greater accuracy.

For the reasons stated, the judgment of the court below is reversed with instructions to grant a new trial.

Costs to appellant.

PRATT, C. J., and WOLFE and McDONOUGH, JJ., concur.

WADE, J., concurs in the result.