322 P.2d 391

Erwin MOTZKUS and Lucille Motzkus, his wife, Plaintiffs and Respondents,

v.

Marvin CARROLL and Elva Dween Carroll, his wife, and Mrs. Ruth Kempton, Defendants and Appellants,

and

Zion's Savings Bank & Trust Company, Trustee for Carl M. Hansen, Defendant and Respondent.

No. 8706.

Supreme Court of Utah.

March 10, 1958.

N. H. Tanner, James A. Stump, Salt Lake City, for appellants.

Clyde & Mecham, Edward M. Garrett, Thomas & Armstrong, Salt Lake City, for respondents.

WADE, Justice.

Does the evidence in this case require a holding that a boundary line by acquiescence has been established at the old fence between the Bank-Motzkus tract on the north and the Kempton-Carroll tract which adjoins it on the south? This is the determinative question to be answered on this appeal. Although there are conflicting contentions both as to the inferences to be drawn from established facts and as

to what facts have been established, a careful study of the transcript shows no genuine issue as to any material fact in the case. From such study we conclude that the answer to the above question must be that such boundary line by acquiescence has been established.

The following map is inserted for illustration purposes. It is not drawn to scale but generally follows the survey by Mack Kesler for Motzkus in 1953 and 1955. It shows the two tracts bounded on the west end by State Street, with the Bank-Motzkus tract on top or to the north with the Kempton-Carroll tract adjoining it on the south or bottom side of the map. The figures indicate that according to the recorded descriptions the Motzkus tract is 115.54 feet north and south and 495.8 feet east and west, but according to the Kesler survey it is actually only 114.76 feet wide but is 501.74 feet long. The Carroll tract which is to the south and adjoins the Motzkus tract, by prior recorded deeds, is 57.77 feet by 301.8 feet but by the survey there is actually only 57.38 feet in width. The solid line around the respective tracts represents the boundary line in accordance with the survey. The broken line above the solid dividing line indicates the fence line 4.1 feet north of the survey line. There is nothing in the evidence to show that any of the survey lines coincide with any fence line.

Plaintiffs, Motzkus, husband and wife and respondents here, on July 17, 1953, entered into a contract with defendant Zion's Savings Bank & Trust Company, herein referred to as the Bank, as trustee for Carl M. Hansen, to purchase the Motzkus tract. Thereafter, about August 17, 1953, and again on July 14, 1955, Mack Kesler made a survey for Motzkus by which he determined the boundary line between the two lots to be about 4 feet south of the fence line and about even with the north side of the north wall of the house on the Carroll property at the front west end thereof, but about .55 feet south of the north side of such wall at the rear or east end of such house. Thus the survey indicates that the north wall of the house on the Carroll property veers slightly to the north as it goes toward the east. Also, to the north of the north wall of the Carroll house and south of the fence line a septic tank has been maintained for many years by the owners of the Carroll tract with a drain pipe running from such tank to the street.

At the time when Motzkus contracted to purchase his tract there was a large house standing thereon. Carl M. Hansen, from whom the Bank took a deed in trust, acquired that tract by warranty deed dated October 3, 1928. He lived on that property from the date of that deed until sometime in 1951, about 23 years. During that time he repaired the fence, asserting that it was on the boundary line between the two tracts, and that it belonged to him. He also objected to climbing rose bushes growing on the Kempton side of the fence coming through onto his side, and clipped them off where they came through the fence, but he never claimed any right beyond the fence. Prior to the time when Hansen occupied the Motzkus property his predecessors occupied that property, lived in the house thereon and acquiesced in that fence as the boundary line for more than 45 years before the commencement of this action. The Carrolls and Mrs. Kempton and their predecessors have continuously occupied the house on the Carroll property for more than 45 years prior to the commencement of this action. Claiming, and using the property up to the fence, acquiescing in it as the boundary line and not claiming beyond it. On July 1, 1955, the defendants Carroll, husband and wife, and appellants here, contracted to purchase the Carroll tract from defendant, Mrs. Kempton, and thereafter took possession of that property. In June of 1955 Mrs. Kempton had a survey made of her property which agreed substantially with the Kesler survey. There is evidence in the record that Mr. Carroll knew of these surveys when he entered in the contract to purchase.

After contracting to purchase Motzkus removed the house and commenced construction of the Motel units on his property.

He first constructed Unit No. 1 on the north side of his tract, and thereafter during September of 1954 he commenced the construction of Unit No. 2 on the south side of his tract. In doing so he removed the old fence as far back as the east end of such Unit No. 2 and placed the south wall of that unit on or just north of the fence line. The south side of that wall is 4.1 feet north of where the Kesler survey fixed the boundary line. Mrs. Kempton consented that Motzkus could remove the fence in order to build his motel Unit No. 2. After the Carrolls contracted to purchase their property Mr. Carroll restored the fence from the east end of the south side of the Motzkus Motel Unit No. 2 to the east end of his property. In doing so he restored some of the posts which were lying in the weeds on the Motzkus tract and reset them as near as he could on the same line where they had previously stood. He also replaced posts which had rotted and were unfit to be reset with new steel posts, and added some new strands of wire. Thereafter he warned Motzkus not to remove the fence. He graded his property with gravel for a trailer court and built some buildings on the lot in back of his house.

On March 9, 1956, plaintiffs commenced this action to determine the location of the boundary line and in separate counts asked for damages both from the defendants Kempton, the Carrolls and also from the Bank.

The plaintiffs Motzkus', and defendant Bank's interest as far as this appeal is concerned are identical. Both claim that the court correctly held that no boundary line by acquiescence was established. In support of such claims they advance arguments which we will discuss in the following order: (1) They contend that the evidence is ample from which the court could reasonably find that no boundary line by acquiescence was established. (2) They contend that there is no evidence of any dispute or uncertainty in the location of the true boundary line. (3) They contend that there is no evidence that there was an agreement between the predecessors in ownership of the two tracts that the fence should be the boundary line. (4) They contend that the Carrolls purchased their tract knowing where the survey showed the boundary line, and that Mrs. Kempton made no objection to the survey line when it was pointed out to her, and that she consented that Motzkus could remove the fence. (5) They contend that the fence line is so indefinite and uncertain, so crooked and varying in size of posts that it cannot mark the boundary line by acquiescence.

■ (1) A careful study of the evidence clearly shows that there is no substan-

tial dispute on the facts of whether a boundary line by acquiescence has been established. The evidence is clear, positive and not in dispute that for more than 45 years prior to the trial and until the Kesler survey was made in 1953, there was a fence between the two tracts, that the house on each tract was occupied by the owner, and that the respective owners and occupants of each tract recognized, acquiesced in, and treated such fence as marking the boundary line between the two tracts. Further, that during that time each owner claimed the land up to such fence and did not claim any land beyond; that each owner farmed and used his tract to the fence and never claimed or used the land beyond it. There is a total lack of any evidence as to who built the fence or when it was built except that it was built before the time when any witness knew the property, and that some witnesses had known the property for more than 45 years prior to the trial.

Some problems raised by this evidence will be discussed later. We conclude that under this evidence an affirmative finding that the boundary line by acquiescence in the old fence as marking the boundary was established and that the court should have so held.

(2) Respondents' contention that there is no evidence that there was ever any dispute or uncertainty in the location of the true boundary line, although true, does not support the trial court's decision that no boundary line by acquiescence was established. This raises the question of which side has the burden of producing evidence on the question of a dispute or uncertainty. Or in other words, which side must win where, as here, it is established that the parties have acquiesced for the necessary long period of time that a fence marked the boundary line with no evidence other than the acquiescence on whether there was a dispute or uncertainty. This question was well answered by this court, speaking through Mr. Justice Wolfe, in Brown v. Milliner [1] as follows:

"In some of the opinions of this court on the subject of disputed boundaries, there are statements to the effect that the location of the true boundary must be uncertain, unknown or in dispute before an agreement between the adjoining land owners fixing the boundary will be upheld, citing Tripp v. Bagley [74 Utah 57, 267 P. 912, 69 A.L.R. 1417], supra, in support thereof. *Such statements should be understood to mean that if the location of the true boundary line is known to the adjoining*

1. Brown v. Milliner, 120 Utah 16, at page 27, 232 P.2d 202, at page 208, also see my concurring opinion in Hummel v. Young, 1 Utah 2d 237, at pages 241–244, 265 P.2d 410, at pages 412–414, and 3 Utah Law Review 504, Boundary Line by Acquiescence by D. Martin Cook.

owners, they cannot by parol agreement establish the boundary elsewhere. As was pointed out in the Tripp case, such an agreement would be in contravention of the statute of frauds. *But the Tripp case does not require a party relying upon a boundary which has been acquiesced in for a long period of time to produce evidence that the location of the true boundary was ever unknown, uncertain or in dispute. That the true boundary was uncertain or in dispute and that the parties agreed upon the recognized boundary as the dividing line will be implied from the parties' long acquiescence.* Roberts v. Brae, 5 Cal.2d 356, 54 P.2d 698. In Holmes v. Judge [31 Utah 269, 87 P. 1009], supra, this court, speaking through Mr. Justice Frick, set forth the following requirements necessary to establish a boundary by acquiescence: The line must be open, visible, marked by monuments, fences or buildings and recognized as the boundary for a long term of years. It was expressly stated by the court in that case that there was no evidence how the fence and building which were recognized as the boundary came to be erected, or that there was ever any dispute between the adjoining owners concerning the location of the true boundary, or that any question' was ever raised as to its location until shortly before the plaintiff commenced his action." (Emphasis added.)

From the foregoing it is clear that where a party by evidence establishes a long period of acquiescence in a fence as marking the boundary line between two tracts, he is not required to also produce evidence that the location of the true boundary line was ever unknown, uncertain or in dispute. The establishment of a long period of acquiescence in a fence as marking the boundary line between two tracts by the respective owners gives rise to a presumption that the true boundary line was in dispute or uncertain, which places, at least, the burden of producing evidence that there was no dispute or uncertainty but that the true boundary line was known to the respective owners on the party claiming that such was the fact. Where, as here, there is no evidence on that question other than the proof of acquiescence in the fence as marking the boundary line for the required long period of time the trial court must find that the boundary line by acquiescence has been established.[2]

(3) In accordance with respondents' contention, here there is no evidence of an agreement between the respective owners of the tract that the fence should

2. See In re Swan's Estate, 4 Utah 2d 277, 293 P.2d 682, and authorities cited in notes, 4, 7, 8, 9 and 10 thereof.

mark the boundary line. However, we have many times held, not only, that a party claiming a boundary line by acquiescence need not produce evidence of such an agreement, but also that proof of such acquiescence for the required long period of time is proof of so conclusive a nature that the opposing party is precluded from offering evidence to the contrary because such proof is immaterial. To that effect see Holmes v. Judge[3] where we quote with approval from Baldwin v. Brown [16 N.Y. 359], a New York case as follows:

"The supposition of such an agreement [referring to an agreement establishing a boundary line] in cases of long acquiescence in an established line is, as I apprehend, entirely superfluous. The acquiescence in such cases affords ground, not merely for an inference of fact to go to the jury as evidence of an original parol agreement, but for a direct *legal inference as to the true boundary line*. It is held to be proof of so conclusive a nature that the party is precluded from offering any evidence to the contrary. Unless the acquiescence has continued for a sufficient length of time to become thus conclusive, it is of no importance. The rule seems to have been adopted as a rule of repose, with a view to the

quieting of titles, and rests upon the same reason as our statute prohibiting the disturbance of an adverse possession which has continued for twenty years. * * *" (Italics taken from the quotation.)

(4) The boundary line by acquiescence in accordance with the foregoing holdings had been established long before the survey made in 1953. This is equally true whether it takes only seven years or more than twenty years. For in either case the long period of acquiescence had expired more than twenty years before the Kesler survey. The boundary line by acquiescence being once established it was immaterial that Mrs. Kempton did not protest when the surveyor showed her where he located the boundary line or that she consented that Motzkus could remove the west part of the fence. The same is true of the fact that the Carrolls knew where the surveyors located the boundary line when they purchased. For such knowledge at that time did not nullify the establishment of the boundary line by acquiescence which had long been completed before the Carroll purchase.[4]

(5) The contention that the fence line was indefinite and uncertain, was crooked and that the posts varied so much in size that it cannot mark the boundary

3. See Holmes v. Judge, 31 Utah 269, 276, 87 P. 1009, 1012. Also authorities cited in note 1 supra.

4. See Provonsha v. Pitman, 6 Utah 2d 26, 305 P.2d 486.

line by acquiescence is obviously untenable. The evidence is clear and not in dispute that the fence extended from the street on the west end of the lots to the east beyond the east end of the Carroll property with a continual string of posts and with at least two strands of wire all the way. Although there is evidence that the posts varied in thickness from about 2 to 4 inches to a foot and when the fence was out of repair some of the posts leaned in different directions as much as 15 degrees from vertical, thus making the fence crooked, yet the surveyor, Kesler, whose testimony in this respect was as favorable as any witness to the plaintiffs, testified that in his opinion "When it (the fence) was put in it was straight as your eye could make it."

There is certainly nothing about these facts which would prevent this fence from marking the boundary line between these two tracts. We have held that a fence which has been acquiesced in as marking the boundary line "in the absence of proof of a contrary intention," occupies "equal amounts of the co-terminus land owners' property."[5] Applying this rule, the trial court is directed to take evidence as to the exact location of the center of this fence line from the east end of the Kempton-Carroll tract to the east end of the motel and continue that line out to the street south of the motel Unit No. 2

and enter a judgment adjudicating such line as the boundary line between the two tracts.

Decision is reversed with costs to appellants.

McDONOUGH, C. J., and CROCKETT, WORTHEN, and HENRIOD, JJ., concur.

5. See Rich v. Stephens, 79 Utah 411, 419, 11 P.2d 295, 298.