John Joseph MADSEN, Plaintiff and Appellant,

v.

Darrell L. CLEGG, Defendant and Respondent.

No. 16887.

Supreme Court of Utah.

Dec. 22, 1981.

Clair M. Aldrich, Provo, for plaintiff and appellant.

Frank W. Ballard, Provo, for defendant and respondent.

HALL, Chief Justice:

Plaintiff appeals from a judgment quieting title in defendant to disputed real property under the doctrine of boundary by acquiescence.

The dispositive facts of this case are essentially uncontroverted. The parties' predecessors in interest acquired adjoining tracts of land from a common grantor on the same day in 1904. The metes and bounds descriptions of their respective deeds of conveyance are compatible and form a boundary between the tracts which takes a substantial jog of 1.85 chains to the north before continuing east. This jog enclosed a shed and corral area as a part of the conveyance to plaintiff's father. The corral was fenced with barbed wire, and a similar fence extended to the west along the boundary line as described by the deeds.

Shortly after acquiring the property, plaintiff's father constructed the fence in question. It was located approximately 25 feet south of the boundary line, and ran the full length of the property in a generally straight east-west direction in stark contrast to the jogged true boundary line. The following sketch is representative of the on-site appearance of the two tracts of land:

Plaintiff testified that his father used the strip of land between the two east-west fences as a cattle lane to drive his cattle from the corral west to an adjoining tract of land which he also owned. In 1936, when the ground became muddy due to improper drainage, plaintiff's father moved the cattle and planted the area north of the fence with beets. The area was farmed for an unknown number of years until this became inconvenient because of its size and shape. It was subsequently rented, along with the remainder of the tract, to various tenants until plaintiff purchased the land in 1942.

At some time between 1936 and 1942, the corral, the shed and the original northerly fence were torn down and defendant's father, who then owned the tract to the north, began to farm this section. When plaintiff purchased his land, he became concerned about this use of the land by defendant's father; and from 1942 to 1979, he took pains to pay taxes on the land every year as soon as they were assessed, believing that this action would protect him against any adverse claim to the property. He did not use the land in question during those years except occasionally to trap muskrats.

In 1957, plaintiff conveyed to Orem City a strip of land approximately 25 feet wide, running along the south side of the 1904 fence. According to plaintiff, this strip was selected in preference to the strip north of the fence in order to leave to the north an area large enough that it could be developed as commercial or residential property. Plaintiff also testified that the city did not want to use the northern strip.

In 1979, plaintiff put a new fence along the boundary line which had been established by the 1904 deeds. Defendant removed the fence, whereupon plaintiff filed the present action to quiet title.

The trial court found that defendant and his predecessors had farmed the land in question since 1930 without obtaining plaintiff's permission and that plaintiff had failed to notify defendant of his claim upon the land until 1979. From these facts, the court concluded that the 1904 fence line had been established by mutual acquiescence as the boundary between the two properties.

The doctrine of boundary by acquiescence has long been recognized, and when the location of the true boundary between adjoining tracts of land is unknown, uncertain or in dispute, the owners thereof may, by parol agreement, establish the boundary line and thereby irrevocably bind themselves and their grantees.[1] However, when the true boundary is known, any parol

1. *Brown v. Milliner*, 120 Utah 16, 232 P.2d 202 (1951), citing *Rydalch v. Anderson*, 37 Utah 99, 107 P. 25 (1910) and *Tripp v. Bagley*, 74 Utah 57, 276 P. 912 (1928).

agreement of the owners establishing the boundary elsewhere is void and unenforceable by virtue of the statute of frauds, which requires a conveyance of real property to be in writing.[2]

▌ This Court has determined that in the absence of an express agreement as to the location of the boundary between adjoining owners, the law will imply an agreement fixing the boundary as located, if it can do so consistently with the facts appearing.[3] However, when the evidence fails to support any implication that a fence has been erected by adjoining owners pursuant to an agreement between them as to the location of the boundary, the doctrine of boundary by acquiescence has no application.[4] In an earlier case, this Court cautioned:

> We do not wish to be understood as holding that the parties may not claim to the true boundary, where an assumed or agreed boundary is located through mistake or inadvertence, *or where it is clear that the line as located was not intended as a boundary*, and where a boundary so located has not been acquiesced in for a long term of years by the parties in interest. [Emphasis added.][5]

▌ In the instant case, plaintiff showed that no uncertainty or dispute existed concerning the location of the boundary line at the time the 1904 fence was constructed. The 1904 deeds to plaintiff's and defendant's predecessors unmistakably define a boundary which takes a substantial jog northward at its eastern end. Defendant has raised no question concerning the validity of these deeds; nor has he shown any subsequent conveyance by plaintiff or his father which might cast doubt on plaintiff's present title. The trial court did not include in its findings any indication that the boundary was disputed when plaintiff's father built the fence or that the fence was intended originally as a boundary line. In the absence of any initial uncertainty concerning the ownership of the property in question, the doctrine of boundary by acquiescence has no application.

▌ Even if the trial court had found that uncertainty existed concerning the correct boundary line, it could not have resolved such uncertainty on the basis of defendant's acquiescence theory, because the evidence simply fails to support any finding of an agreement between the parties. Plaintiff testified that his father and defendant's father had never agreed upon the 1904 fence line as a boundary line and that he himself had never regarded the fence line as a boundary line. He testified that he promptly paid taxes every year in order to preserve his claim to the entire property, and the tax records introduced into evidence confirm this testimony.

Defendant, in contrast, did not pay taxes on the corral area until his tax description was changed in 1973 to include that area. Defendant introduced no evidence to show why his tax description was altered in this manner. From 1973 to 1978, he paid taxes on the disputed property, but only after plaintiff had already paid them.

Plaintiff introduced into evidence an application made by his wife in 1955 for a permit to drill an artesian well on the former corral area. This application supports plaintiff's testimony that he regarded that area as his own although he was not making use of it at that time. Plaintiff testified that he had plans to build seven homes on his property, including one on the northern portion, and that the well had been drilled and "proved up" for this purpose. The planned development was prevented only by a change in zoning laws.

Plaintiff's testimony, his payment of taxes on the disputed property, his use of the

---

2. *Tripp v. Bagley, supra*, note 1.

3. *Holmes v. Judge*, 31 Utah 269, 87 P. 1009 (1906).

4. *Peterson v. Johnson*, 84 Utah 89, 34 P.2d 697 (1934); *Home Owners' Loan Corporation v.*

Dudley, 105 Utah 208, 141 P.2d 160 (1943); *Glenn v. Whitney*, 116 Utah 267, 209 P.2d 257 (1949).

5. *Holmes v. Judge, supra*, note 3.

property to trap muskrats and his drilling of a well on the property all show that he did not acquiesce in defendant's claim of ownership. Defendant's own testimony confirms the fact that the parties never agreed upon the fence line as a boundary. Nor does the fact that plaintiff allowed defendant to share with him the use of the land give rise to any implication that the fence was erected pursuant to an agreement to establish a boundary.[6] The evidence utterly fails to support the conclusion of the trial court that a boundary was established by mutual acquiescence.

Defendant, in his counterclaim, also asserted a right to the disputed property under the doctrine of adverse possession. Defendant did not argue this theory on appeal, nor did he support his claim by showing payment of taxes on the property for the requisite seven years. Moreover, defendant failed to clearly establish the extent of the property claimed under this theory: testimony by his expert showed that the description of the property on which defendant paid taxes from 1973 to 1978 differs from that of the property which he now claims. Thus, defendant has established no right to the property through adverse possession.

We hold that under the doctrines both of boundary by acquiescence and of adverse possession, defendant's claim to the property described in plaintiff's complaint fails, and that title thereto should be quieted in plaintiff.

Reversed and remanded for disposition consistent with this opinion. Costs to plaintiff.

STEWART and OAKS, JJ., and DEAN E. CONDER, District Judge, concur.

HOWE, J., concurs in the result.

---

6. *Brown v. Milliner, supra,* note 1.