Charles H. STRATFORD and Robert L. Harris, Plaintiffs and Appellants,

v.

Earl P. MORGAN, Earl D. Morgan, Gloria M. Broadbent, Evelyn M. Neveille and Alice M. Timmerman, Defendants and Respondents.

No. 18306.

Supreme Court of Utah.

Aug. 30, 1984.

David E. West, Salt Lake City, for plaintiffs and appellants.

Thomas A. Duffin, Salt Lake City, for defendants and respondents.

HALL, Chief Justice:

Plaintiffs appeal from a judgment dismissing their action to quiet title to two small parcels of property on the basis of boundary by acquiescence. We affirm.

On March 10, 1951, plaintiffs' predecessors in interest, L.H. and Ella Stratford (hereinafter "the Stratfords"), purchased a 4.77-acre tract of land in Salt Lake County. This property was conveyed to plaintiffs as trustees for the Stratford grandchildren by Ella Stratford after her husband's death.

The property was purchased by the Stratfords for the purpose of operating a hobby farm, where they could raise livestock (horses, cows, sheep, etc.) and other farm animals. In order to make the property suitable for such use, the Stratfords mended already-existing fences and constructed a new one along the south bank of Big Cottonwood Creek.

Shortly after the Stratfords constructed the fence alongside the creek, they put their livestock and other farm animals on the property. They later built a fish pond and a track for exercising their horses. Both the pond and the track partially extend into the disputed parcel denominated Parcel #2 in the diagram. The plaintiffs and their predecessors in interest treated the property up to the northern fence line as their own and used it in the manner so described without interruption or dispute from the defendants or their predecessors until 1979, a period of nearly 30 years.

In 1979, plaintiff Charles Stratford had the property surveyed. (See diagram.) The survey indicated that the location of the fence constructed by the Stratfords between the parties' properties was not compatible with the metes and bounds description of the boundary line between the properties. The portion of the fence at issue here had been built for the most part inside the legal boundaries of defendants' property.

After the plaintiffs received the survey, they prepared and presented to defendants for their signatures a quitclaim deed conveying the area put in issue as a result of the discrepancy between the deed survey and the fence line. Defendants refused to sign the quitclaim deed.

As a result, plaintiffs initiated this quiet title action, claiming that under the doctrine of boundary by acquiescence they own fee simple title to the parcels designated on the accompanying diagram as Parcels #1 and #2. At trial, after plaintiffs had presented their evidence and rested their case, defendants moved for a dismissal, which the court granted.

Plaintiffs contend that the trial court erred in four aspects: (1) in ruling that plaintiffs' evidence was insufficient to es-

tablish "prima facie" a boundary by acquiescence; (2) in excluding certain evidence proffered by plaintiffs; (3) in the form of judgment entered against plaintiffs; and (4) in denying plaintiffs' motion to amend the pleadings to conform with the evidence.

1. The record does not include the metes and bounds description of defendants' (Morgan) tract. It does, however, indicate that the metes and bounds description of the pertinent southern boundary of defendants' property is the same as the metes and bounds description describing the northern boundary of plaintiffs' property. The record also fails to show the eastern boundary of defendants' property, but it is undisputed that defendants do not own all of the property contiguous to plaintiffs' northern boundary line.

## I. BOUNDARY BY ACQUIESCENCE

The trial court found, relying on *Madsen v. Clegg*,[2] that plaintiffs had failed to produce evidence showing that there was dispute or uncertainty as to the true boundary and thus had failed to prove all of the necessary elements of boundary by acquiescence. Plaintiffs contend that a showing of dispute or uncertainty is not a necessary element of boundary by acquiescence. Case law does not support that contention.

In *Madsen,* the parties' predecessors in interest had acquired adjoining tracts of land from a common grantor on the same day in 1904. The metes and bounds descriptions of their respective deeds were compatible insofar as they described the boundary between the two tracts. Although a fence existed along the boundary, plaintiff's predecessor, owner of the southern parcel, constructed a new fence upon his own property approximately 25 feet south of the boundary line. He used the small lane between the fences to drive his cattle from a corral that had been constructed in the northeast corner of his parcel. Some years later (between 1936 and 1942), the original fence on the boundary line and the corral were torn down, and defendant's predecessor in interest began to farm the land up to the fence constructed by plaintiff's predecessor. In 1979, plaintiff put a new fence along the boundary line, which defendant removed. Plaintiff then filed an action to quiet title to the small parcel between the two fences.

The trial court in *Madsen* found that inasmuch as defendant and his predecessors had farmed the land in question since the 1930s without obtaining plaintiff's permission and inasmuch as plaintiff had failed to notify defendant of his claim upon the land until 1979, the fence constructed by plaintiff's predecessor in 1904 (25 feet south of the metes and bounds boundary line) had been established by mutual acquiescence as the boundary between the two properties.

On appeal, this Court reversed the trial court, saying that "when the location of the true boundary between adjoining tracts of land is unknown, uncertain or in dispute, the owners thereof may [establish a boundary by acquiescence]."[3] This Court found, however, that:

> [P]laintiff showed that no uncertainty or dispute existed concerning the location of the boundary line at the time the 1904 fence was constructed. The 1904 deeds to plaintiff's and defendant's predecessors unmistakenly define a boundary which takes a substantial jog northward at its eastern end. Defendant has raised no question concerning the validity of these deeds; nor has he shown any subsequent conveyance by plaintiff or his father which might cast doubt on plaintiff's present title. The trial court did not include in its findings any indication that the boundary was disputed when plaintiff's father built the fence or that the fence was intended originally as a boundary line. In the absence of any initial uncertainty concerning the ownership of the property in question, the doctrine of boundary by aquiescence has no application.[4]

*Ringwood v. Bradford,*[5] which involved a fence not erected to settle any uncertainty or dispute, also supports the findings of the trial court. In *Ringwood*, the Court cited *Glenn v. Whitney*[6] with approval and quoted therefrom as follows:

> The theory under which a boundary line is established by long acquiescence along an existing fence line is founded on the doctrine that the parties erect the fence to settle some doubt or uncertainty which they may have as to the location of the true boundary, and the [sic] compromise their differences by agreeing to accept the fence line as the limiting line of their respective lands. The mere fact that a fence happens to be put up and neither party does anything about it for

**2.** *Utah, 639 P.2d 726 (1981).*
**3.** *Id.* at 728.
**4.** *Id.* at 729.

**5.** *2 Utah 2d 119, 269 P.2d 1053 (1954).*
**6.** 116 Utah 267, 209 P.2d 257 (1949).

a long period of time will not establish it as the true boundary. [Citations omitted.] [7]

In *Halladay v. Cluff,*[8] the Court declared that the showing of dispute or uncertainty necessary in order to establish boundary by acquiescence should be measured against an objective test of reasonableness:

> Under the rule as we have defined it here, the property line shown on the record title cannot be displaced by another boundary unless it is shown that during the period of acquiescence there was some objectively measurable circumstance in the record title or in the reasonably available survey information (or other technique by which record title information was located on the ground) that would have prevented a landowner, as a practical matter, from being reasonably certain about the true location of the boundary. By the same token, a claimant cannot assert boundary by acquiescence if he or his predecessors in title had reason to know the true location of the boundary during the period of acquiescence.[9]

■ Plaintiffs in this case failed to provide any objective or subjective evidence of dispute or uncertainty. The trial judge found, supported by the evidence, that the parties received valid deeds containing metes and bounds descriptions of their respective parcels, that said deed descriptions were compatible insofar as they described the boundary line between the properties, that no dispute ever arose with respect to plaintiffs' fence or the true boundary line until shortly before this litigation began, and that a survey prepared at plaintiffs' request based upon the parties' respective deed descriptions established the true location of their common boundary to be a significant distance south of plaintiffs' fence line. These facts do not show any dispute or uncertainty as measured by *Halladay.*

Therefore, plaintiffs failed to meet their burden of providing evidence of all of the elements of boundary by acquiescence.

## II. EXCLUSION OF EVIDENCE

■ The next claim asserted by plaintiffs is that the trial court erred in excluding certain evidence offered by them. The excluded evidence consisted of a title opinion, correspondence between L.H. Stratford and Salt Lake County, and Ella Stratford's testimony as to what she believed the northern boundaries of the property to be when purchased. The title opinion and correspondence with Salt Lake County were excluded on the basis of hearsay, while the objection to Mrs. Stratford's testimony was sustained by the trial judge before counsel could finish his objection.

Plaintiffs contend that the contested evidence was offered by them to establish the state of mind of the Stratfords at the time they erected the objected fence.

Mental state of the Stratfords was not at issue in this case. No element of boundary by acquiescence could be proved by evidence as to state of mind. Therefore, since state of mind was not an issue, the only effect the challenged evidence could have had was its supposed truth value. As to that the evidence was unquestionably hearsay and thus inadmissible.[10]

## III. FORM OF JUDGMENT

Plaintiffs' third assertion of error is that the form of the judgment of dismissal was improper.

■ The judgment declares: "1. It is hereby ordered, adjudged and decreed that the plaintiffs are not the owners in fee

---

7. *Supra* note 5, at 1054.

8. Utah, 685 P.2d 500 (1984).

9. *Id.,* at 505.

10. Rule 63, Utah Rules of Evidence, provides as follows:

> Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible
> . . . .

simple title or in fact have any record title of the following described property in Salt Lake County described as follows: [Parcels 1 and 2 are thereafter described by metes and bounds]."

Plaintiffs contend that these descriptions include property that is in possession of plaintiffs in which defendants have no record title. While plaintiffs' and defendants' land is contiguous along the mutual boundaries of Parcel # 2, it is not contiguous in the remainder. Therefore, plaintiffs argue that the judgment clouds title to property possessed by plaintiffs and not owned by defendants. Further, the judgment in this case was rendered at the conclusion of plaintiffs' evidence on a motion to dismiss.

Plaintiffs' argument has merit. The judgment in this case should affect the rights of the parties to the case only. Rights and remedies as to other parties should not be adjudicated and resolved in this case.

Therefore, on remand the judgment of dismissal should be modified to decree that plaintiffs' action against defendants is dismissed with prejudice and, as against these defendants, plaintiffs have no right, title or interest in Parcels # 1 or # 2 based on boundary by acquiescence.

## IV. MOTION TO AMEND THE PLEADINGS

Plaintiffs' final argument is that the trial court erred by refusing to amend the complaint to allow them to plead "adverse possession" as an additional theory upon which to establish their ownership in the disputed parcels. Although Rule 15, Utah Rules of Civil Procedure,[11] tends to favor the granting of leave to amend, the matter remains in the sound discretion of the trial court.[12] In denying this motion, the trial court cited the following reasons:

(1) plaintiffs had earlier indicated to the court that they did not intend to rely upon adverse possession and (2) they had failed to show the requisite payment of taxes on the disputed parcels. The court's reasoning does not indicate an abuse of discretion.

The case is remanded to the district court for entry of judgment in accordance with the opinions expressed herein.

STEWART and DURHAM, JJ., concur.

HOWE, Justice (dissenting):

I dissent. The trial court erred in dismissing the plaintiffs' complaint at the end of the presentation of their evidence. The dismissal was bottomed on the failure of the plaintiffs to produce any evidence that the location of the boundary between the properties was ever uncertain or in dispute. The trial judge apparently thought that *Madsen v. Clegg*, Utah, 639 P.2d 726 (1981) required such evidence.

In defense of the trial judge's action, admittedly there is dictum in *Madsen v. Clegg* that could be interpreted as imposing such a requirement. It was for that reason that this writer only concurred in the result in that case. I thought that there was no boundary by acquiescence because the fence which allegedly was acquiesced in as the boundary ran in a straight line, whereas the true line as described in the deeds of both of the adjoining owners had a right-angle turn in it. In view of that fact, I thought that the adjoining owners could not have reasonably believed that the fence was on the true boundary line. I regarded the reference in that case to uncertainty and dispute as surplusage, and directed to cases where a boundary is fixed by an express parol agreement as distinguished from a case of boundary by acquiescence.

---

**11.** The pertinent subsection, 15(b), provides:
When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the

evidence and to raise these issues may be made upon motion of any party at any time
. . . .

**12.** *Westley v. Farmer's Ins. Exch.*, Utah, 663 P.2d 93 (1983); *Christiansen v. Utah Transit Auth.*, Utah, 649 P.2d 42 (1982).

However, in the next boundary by acquiescence case decided by this Court, *Halladay v. Cluff*, Utah, 685 P.2d 500 (1984) proof of uncertainty and dispute was elevated (albeit by dicta again) to a requirement. This writer in his dissenting opinion vigorously protested that suggestion and referred to *Brown v. Milliner*, 120 Utah 16, 232 P.2d 202 (1951) where this Court in a unanimous opinion stated that uncertainty and dispute are significant only in cases involving a boundary fixed on the ground by express parol agreement of the adjoining owners. In such cases, if the location of the true boundary line is known to them, they cannot fix it elsewhere by their agreement because such an agreement would contravene the statute of frauds. But we pointed out that uncertainty and dispute were not required to be shown by a party relying on a boundary which had been acquiesced in for a long period of time but which had not been fixed by express parol agreement, citing *Holmes v. Judge*, 31 Utah 269, 87 P. 1009 (1906), the first boundary by acquiescence case decided by this Court. Proof of uncertainty and dispute was again later rejected as a requirement in *Motzkus v. Carroll*, 7 Utah 2d 237, 322 P.2d 391 (1958). The majority misreads *Ringwood v. Bradford*, 2 Utah 2d 119, 269 P.2d 1053 (1954). It was decided on the basis that the fence was never intended or recognized as a boundary, but was erected only to protect young trees from sheep. That case in no wise supports the necessity of a showing of uncertainty and dispute. *Madsen v. Clegg* and *Halladay v. Cluff* must bear the responsibility for imposing this new requirement.

The holding of the majority opinion today that uncertainty and dispute must be proved as an element of boundary by acquiescence, coupled with our recent decision in *Halladay v. Cluff*, supra, effectively sounds the death knell of boundary by acquiescence in this state. These two cases have overruled sub silentio most, if not all, of the cases decided by this Court over the last eighty years in which the doctrine was applied. For a list of these cases, see the appendix to my dissenting opinion in *Halladay v. Cluff*, supra. It is useless to longer pretend that application of the doctrine will ever again be upheld by this Court. As I pointed out in my dissenting opinion in *Halladay v. Cluff*, it is entirely foreign to the doctrine of boundary by acquiescence to impose the requirement of proof of uncertainty and dispute. This is because the very foundation of the doctrine is that the law *implies* that the adjoining landowners were once uncertain or in dispute and that the boundary was marked on the ground in settlement thereof. After the parties have for a long period of time acquiesced in that marked boundary, the law protects it. *Holmes v. Judge*, supra. This implication is drawn because due to the passage of time there is often little or no evidence available as to the circumstances surrounding the erection of the boundary marker. Without being able to rely on the implication, the doctrine of boundary by acquiescence cannot continue to exist as a workable and viable doctrine. In many of our cases, it is expressly stated that the boundary which was acquiesced in was built prior to the time that the present landowners acquired title. Those predecessors in title who supposedly built the marked boundary had moved from the area or were dead. There was no evidence as to how the marked boundary came into being. The marked boundary, however, is viewed as mute evidence of an agreement struck many years ago and acquiesced in since that time. Absent settlement of disputes under the doctrine of boundary by acquiescence, recourse must now be had to surveyors who today with their finer and more precise instruments, and due to destruction of old monuments, often disagree with their professional brothers who set and established boundaries on the properties of this state many years ago. All boundaries are now "fair game."

ZIMMERMAN, J., does not participate herein.