Susanne C. PARSONS and John M.
Parsons, Plaintiffs and Appellants,

v.

Glenn C. ANDERSON, Jr., Defendant
and Respondent.

No. 17827.

Supreme Court of Utah.

Aug. 31, 1984.

Thomas N. Crowther, Salt Lake City, for plaintiffs and appellants.

Walter P. Faber, Jr., W. Chris Wicker, Salt Lake City, for defendant and respondent.

HALL, Chief Justice:

Plaintiffs appeal a judgment of the district court that quieted title to a disputed strip of land in defendant on the basis of boundary by acquiescence and awarded damages to defendant for trespass on that strip by plaintiffs. Defendant cross-appeals the conclusion of the district court that defendant did not carry his burden to establish title to the disputed strip by adverse possession. We reverse the judgment of the district court and quiet title in plaintiffs.

Plaintiffs and defendant own adjoining residential properties with plaintiffs' property situated on the east. The land in dispute is a strip approximately 5.05 feet wide and 340 feet in length that lies between the respective parcels and along the boundary between them.[1] In 1939, title to this strip as well as the adjoining property to the east now owned by plaintiffs was quieted in plaintiffs' immediate predecessors in interest, Lee Neff Taylor and June Bitner Taylor. In 1972, following Mr. Taylor's death, Mrs. Taylor sold this property to the plaintiffs conveying by two separate deeds, a warranty deed and a quitclaim deed. Plaintiffs' property not in dispute was conveyed by warranty deed; the disputed strip was conveyed by quitclaim deed. The description in the quitclaim deed was later found not to close and another quitclaim deed correcting the error in describing the strip in dispute was issued to the plaintiffs in 1979.

Defendant acquired his property in 1972 by warranty deed. His claim to title of the disputed strip arises from a quitclaim deed dated 1957 from Maude O. Airis to some of defendant's predecessors in interest that included the disputed strip. There was no evidence in the chain of title that indicated that Airis had the right to convey any of the disputed strip.

1. *See* sketch.

In the Airis quitclaim deed, an "old fence" is used as the monument to mark the east boundary. A redwood fence existed in 1957 that extended for approximately three-quarters of the length between the defendant's and plaintiffs' properties. A wire fence extended the remainder. Plaintiffs tore down a significant portion of the fence in 1973 and 1975, leaving only about 95 feet standing.

In 1979, defendant began to clear the disputed strip with a bulldozer to build a bath house and assorted accessories to a new swimming pool on his property. Plaintiffs immediately objected, claiming that the disputed strip was their property and

filed this suit to quiet title to the strip. Defendant counterclaimed asking for title to be quieted in him based on his deed, boundary by acquiescence and adverse possession. The trial court quieted title in defendant on the basis of boundary by acquiescence but refused to find adverse possession. The court also awarded damages to defendant for trespass by plaintiffs.

Plaintiffs appeal that judgment, contending the evidence fails to support a finding of boundary by acquiescence and arguing that the court erred in awarding damages for trespass. Defendant cross-appeals the denial of his claim to title of the disputed strip based on adverse possession.

## I. ADVERSE POSSESSION

The trial judge concluded that the evidence presented by the parties as to payment of the taxes on the disputed strip did not meet the burden of proof required to prove adverse possession.

U.C.A., 1953, § 78-12-12, states:

In no case shall adverse possession be considered established under the provisions of any section of this code, unless it shall be shown that the land has been occupied and claimed for the period of seven years continuously, and that the party, his predecessors and grantors have paid all taxes which have been levied and assessed upon such land according to law.

The evidence presented at trial indicated that the county assessor had levied and assessed property taxes on the disputed strip to both plaintiffs and defendant. Both parties paid these taxes from 1966 to 1976 with a three-year lapse by plaintiffs. In a case where both parties paid taxes on disputed land, this Court, in *Rio Grande Western Railway v. Salt Lake Investment Co.*,[2] said that "the one who pays first is to be deemed as having paid the taxes for the purpose of acquiring title by adverse possession."[3] In *Christensen v. Munster*,[4] the Court held that payment by the record title holder of taxes prior to payment by the adverse possessor interrupts the running of the seven-year prescribed period necessary to acquire title by adverse possession.[5] Thus, in order to establish adverse possession, the claimant, here defendant, must show not only that he has paid the taxes on the property adversely claimed, but that he paid them prior in time to the payments of the record title holder for seven consecutive years.[6] This approach serves the primary purpose of the tax requirement in these cases, which is to increase the likelihood that the record title holder will be put on notice of adverse possession.[7]

In this case, the tax summaries indicated that in 1967 and from 1971 to 1976, defendant made his tax payments prior to payments made by plaintiffs. In 1968 to 1970, both parties paid the taxes on the same day. There is no evidence as to which party's tax payment was actually received first in those years. Therefore, defendant has failed to carry his burden of proof of showing that he paid taxes on the disputed property prior in time to plaintiffs for seven consecutive years. The trial court was thus correct in finding that defendant did not establish adverse possession.

## II. BOUNDARY BY ACQUIESCENCE

In order to establish a boundary line by acquiescence, there must be evidence of (1) occupation up to a visible line marked by monuments, fences or buildings, (2) mutual acquiescence in the line as a boundary,

2. 35 Utah 528, 101 P. 586 (1909).

3. *Id.* at 540, 101 P. at 591.

4. 1 Utah 2d 335, 266 P.2d 756 (1954); *See also Bowen v. Olson*, 2 Utah 2d 12, 268 P.2d 983 (1954).

5. *Christensen, supra* note 4, at 336–37, 266 P.2d at 757.

6. *See Neeley v. Kelsch*, Utah, 600 P.2d 979 (1979); *Home Owners' Loan Corp. v. Dudley*, 105 Utah 208, 141 P.2d 160 (1943).

7. *See Bowen v. Olson, supra* note 4.

**539**

(3) for a long period of time, (4) by adjoining landowners.[8] In addition, there must be (5) evidence of dispute or uncertainty as to the true boundary line measured against an objective test.[9]

Plaintiffs argue that none of the elements necessary to establish boundary by acquiescence have been met. We agree that proof of at least some of the elements is lacking, most particularly those of mutual acquiescence, a long period of time and dispute or uncertainty.

■ Defendant claims that a redwood fence located between the two properties marks the east boundary of his property. Plaintiffs, however, contend that their western boundary lies five feet to the west of the location of the fence. Testimony at trial indicated that there was a redwood fence on the property in 1957 and at least partially thereafter. There was no evidence presented as to who built the fence, when it was built or why it was built. Defendant and his predecessors in interest testified that they believed that the fence marked the boundary line between the two properties and treated it as such, although they also testified that the strip was so overgrown that activities by either owner would be difficult to see from the other side. Plaintiffs testified that they understood that their western boundary was five feet to the west of the fence line and that it was so represented to them by the Taylors' son when they walked the property prior to buying it. Plaintiffs also testified that they treated the five-foot strip as theirs. It is undisputed that plaintiffs tore down a significant portion of the fence in 1973 and 1975 without objection by defendant,[10] planted trees, shrubs and other plants on the disputed strip, used it for a compost pile and storing firewood, built a chainlink fence thereon and immediately objected, resulting in this lawsuit, when it appeared

that defendant was attempting to clear and build on the strip.

Defendant contends that plaintiffs' predecessors in interest treated the fence as the boundary line and presented testimony to that effect from his predecessors in interest. June Bitner Taylor, plaintiffs' grantor, did not testify. Plaintiffs, however, argue that delivery of the quitclaim deed specifically describing the disputed strip negates the presumption that the Taylors acquiesced in the fence as the boundary line.

In any event, while it is arguable that mutual acquiescence by both parties' predecessors in interest has been shown, given plaintiffs' actions from 1972 onward, there is little doubt that plaintiffs did not acquiesce in the fence as the boundary line. Therefore, the most that could be said was that there was mutual acquiescence in the fence as boundary from 1957 to 1972, a period of fifteen years.

■ Fifteen years does not meet the requirement of a long period of time. This Court, in *Hobson v. Panguitch Lake Corp.*,[11] said that only under unusual circumstances would any less than twenty years be sufficient to establish boundary by acquiescence. In this case, no unusual circumstances have been shown that might justify a shorter period. Therefore, in light of the evidence which shows a period of acquiescence of at most fifteen years, the element of a sufficiently long period of acquiescence has not been met.

■ Finally, there is no evidence whatsoever in the record showing dispute or uncertainty as to the boundary which resulted in establishing the fence as a boundary line.[12] No evidence was presented at trial showing who built the fence, why it was built or when it was built. In addition, it

8. *Goodman v. Wilkinson,* Utah, 629 P.2d 447 (1981); *Fuoco v. Williams,* 15 Utah 2d 156, 389 P.2d 143 (1964).

9. *Halladay v. Cluff,* 685 P.2d 500 (1984); *Madsen v. Clegg,* Utah, 639 P.2d 726 (1981).

10. Only 95 feet of the fence remains. *See* sketch.

11. Utah, 530 P.2d 792 (1975).

12. *See Stratford v. Morgan,* 689 P.2d 360 (1984).

was undisputed at trial that title to plaintiffs' land including the disputed strip was quieted in the Taylors in 1939 and that Maude Airis had no interest in the disputed strip to convey in her 1957 quitclaim deed to defendant's predecessors in interest. No other evidence was presented that would indicate the fence line was acquiesced in as a boundary because of some uncertainty or dispute as to where the boundary line really was. In the absence of this evidence, this element of boundary by acquiescence has not been proven, and boundary by acquiescence could not be established.

### III.  TRESPASS DAMAGES

In light of our conclusion that defendant had no claim to ownership of the disputed strip, the damage award for trespass was inappropriate, and we need not reach the merits of the damages claim.

The judgment of the trial court quieting title to the disputed strip in defendant and awarding damages to him for trespass is therefore reversed, and the case is remanded to the district court to enter judgment in accordance with the opinion expressed herein.

STEWART and DURHAM, JJ., concur.

HOWE, Justice (dissenting):

I dissent. The majority opinion fails to give proper deference to the finding of fact by the trial court that the parties acquiesced in the fence as a boundary line for more than twenty years stemming from before 1957 to 1979. The trial court did not regard the removal of a portion of the fence in 1973 as breaking the acquiescence since it found that about that time, Mrs. Parsons had a conversation with Mr. Anderson about replacing the old fence with the new one, that the defendants Anderson reasonably expected that a replacement fence would be built and that plaintiffs did not take any other action which would have exhibited their repudiation of the fence line as the boundary. The majority has overlooked this finding of fact in its pronounce-ment that the acquiescence was interrupted in 1973.

The majority also errs in requiring proof that the fence was acquiesced in as a boundary because there was uncertainty or dispute among the adjoining owners as to the location of the true line. I pointed out in my dissenting opinions in *Halladay v. Cluff*, 685 P.2d 500 (1984), and *Stratford v. Morgan*, 689 P.2d 360 (1984), that evidence of uncertainty or dispute is not required in a boundary by acquiescence case. To impose such a requirement in an acquiescence case is to turn it into a case of boundary by express parol agreement. The two means of establishing boundaries should not be confused. In the earliest boundary by acquiescence case decided by this Court, *Holmes v. Judge*, 31 Utah 269, 87 P. 1009 (1906), we observed that there was no evidence that there had ever been any dispute or question over the location of the boundary. We held that lack of evidence to be of no consequence. Although some of our subsequent cases have mentioned dispute or uncertainty, it was either dicta or the author was referring to boundary by express parol agreement where it is a requirement. The law could be no other way since acquiescence in a marked boundary rarely results from dispute or uncertainty as to the location of the true boundary. In the typical case, the parties have never discussed the boundary until shortly before the lawsuit arises. But they have both been content to silently abide by the marked boundary for 20 years or more, and the law will not thereafter allow them to depart from it. In requiring proof of uncertainty or dispute, the majority works the demise of boundary by acquiescence as a means of settling boundary disputes over what are often insignificant narrow strips of land which rarely add any value to the land of the party who seeks to upset the recognized boundary.

The majority opinion decries that "no evidence was presented at trial showing who built the fence, why it was built or when it was built." The lack of answers to those questions is the very stuff of which boundary by acquiescence cases are made.

Evidence as to those matters is wholly immaterial. The important fact is that the fence was on the ground and both adjoining owners acquiesced in it as the boundary between their properties. In *Holmes v. Judge,* supra, the same void in the evidence existed. Said this Court: "The record does not show who constructed the fence nor who requested it to be built, except by mere inference." That lack of evidence was held to be of no consequence in the application of the rule of boundary by acquiescence.

ZIMMERMAN, J., does not participate herein.