## DRAGOS et ux. v. RUSSELL et ux.

No. 7568.   Decided November 19, 1951.   (237 P. 2d 831.)

See 11 C. J. S., Boundaries, sec. 116.  Fence, determining boundary by.  8 Am. Jur., Boundaries, sec. 82; 170 A. L. R. 1144.

*Perry H. Burnham, Wm. S. Livingston,* Salt Lake City, for appellants.

*Harry G. Metos, Sam Bernstein,* Salt Lake City, for respondents.

WOLFE, Chief Justice.

This is an action to quiet title to a strip of land lying along the boundary between the parties. The trial court found that defendants' tourist cabins and sewer line extended onto the plaintiffs' property. The defendants appeal from an order, directing that the cabins and sewer line be removed.

It is undisputed that a survey shows that defendants' motel-cabins are .1 foot from the deed line on the east end and 2.7 feet over the line on the west end. Both parties admit that an old fence which has been there many years has always been considered the actual boundary line. Their difference as to where the old fence line was arises because the defendants tore down the fence at the time they built the latest cabins. The trial court's finding that

"said fence was located on the legal boundary line [deed line] separating said two parcels of land   *   *   *"

is not sustained by the record.

The disputed boundary line runs east and west. The Dragos (plaintiffs') property is on the north, Russells' on the south. In 1911, a Mrs. Mary A. Duncombe owned the Russell property. Her daughter, Daisy Duncombe, testified that from the position of the well and one tree remaining from the early row of trees, the fence line in 1948 appeared to still be in the same place that she remembered it to be when she lived there. She testified that when she first moved on the property, the only fence separating the two lots was of barb wire at the rear of the property which enclosed a pasture. In 1912, Mrs. Mary A. Duncombe and Mr.

Mads Anderson, the owner of the Dragos property at that time, put up an ornamental wire fence on the "line" between the two places. It ran from the sidewalk on State Street 165 feet west where it joined the barb wire fence. A Mr. LeCheminant bought the Dragos property from Mr. Anderson in 1915 and lived there until 1934. His son testified that he had lived there during those years and that in 1948 he examined all the old landmarks and believed the fence to still be in the same place as it previously was when he lived there, inferring that the old fence line was north of the north wall of defendants' cabins. In 1928, Bernard McCabe purchased the Russell property from Mary A. Duncombe. Mr. McCabe built a row of tourist cabins along the north side of his property. Extra foundations were poured for additional cabins which were to be built at some future time. It is undisputed that these foundations were on the Russell lot. The fence was variously estimated to be from six inches to three feet north of the foundations. No objections about any encroachment were made by Mr. LeCheminant who was Mr. McCabe's neighbor on the north at that time. The defendant, Mr. Russell, bought the property from Mr. McCabe in 1943. In 1944, Mr. Russell had all but one of the trees pulled up which grew along the line. In the process of removing the trees, much of the fence was torn down or destroyed. There is also evidence that a fire burned a portion of the fence which had been changed into a board fence by Mr. McCabe. But the conclusive evidence in the record is that in 1946 when the defendant built the cinder block cabins on the west end of the row of cabins, he used the old foundations which had been poured 18 years earlier by Mr. McCabe. The cabins did not "exceed in any way the old foundations laid there". They did not go any further north. These foundations were made of concrete. They were 18 inches deep, six to eight inches wide and 14 to 15 feet long. When they were poured, the fence was north of them, and no one claims they have been moved! The interpretation of the trial court's finding is that the fence has always been right where a survey now reveals the

deed line to be, cutting off 2.7 feet of the defendants' cabins. Manifestly, this cannot be so.

Mr. Dragos and the witnesses of the defendants, all testified that a row of trees grew along the old fence line. A photograph of the rear of the motel-cabins shows one remaining tree which was not pulled up by the defendants. This tree is north of the defendants' cabins at this point and approximately 3 feet north of the deed line. Undisputed testimony locates the defendants' cabins in relation to landmarks which were in existence at a time when the fence was acquiesced in as the boundary. Our inescapable conclusion is that the cabins are south of the old fence line.

It is the defendants' theory that a boundary by acquiescence is thus shown to have existed since ■ 1912. In *Brown* v. *Milliner*, 120 Utah 16, 232 P. 2d 202, 207, we stated that:

"* * * in the absence of evidence that the owners of adjoining property or their predecessors in interest ever expressly agreed as to the location of the boundary between them, if they have occupied their respective premises up to an open boundary line visibly marked by monuments, fences or buildings for a long period of time and mutually recognized it as the dividing line between them, the law will imply an agreement fixing the boundary as located, if it can do so consistently with the facts appearing, and will not permit the parties nor their grantees to depart from such line. *Holmes* v. *Judge*, 31 Utah 269, 87 P. 1009. This rule is sometimes referred to as the doctrine of boundary by acquiescence. In the recent case of *Glenn* v. *Whitney*, 116 Utah 267, 209 P. 2d 257, Mr. Justice Latimer explained that the rule is bottomed on the fiction that at some time in the past the adjoining owners were in dispute or uncertain as to the location of the true boundary and that they compromised their differences by agreeing upon the recognized boundary as the dividing line between their properties."

In the instant case, this presumption is strengthened by the testimony of Daisy Duncombe that her mother and Mads Anderson, a predecessor in interest of the plaintiffs, jointly built a fence separating their two lots. This fence started from a point on State Street which coincides with the de-

scriptions in their deeds and ran 165 feet west where it joined the prior existing barb wire fence. The only possible inference from the evidence is that this fence line veered off to the north as it proceeded west.

The judgment ordering the defendant to remove the cabins is erroneous. The cabins rest on property which must be held to belong to the defendants under our "boundary by acquiescence" doctrine, *Brown* v. *Milliner*, supra, and cases collected therein.

However, it cannot be ascertained with certainty, just how much or what portion of the defendants' sewer line is on the defendants' property. The case should be reversed and remanded. Additional evidence should be taken to determine what description is necessary to fix the boundary between the lots of the parties so that the new line correctly coincides with the fence line which is conclusively shown to be north of the cabins.

The problem concerning the location of the sewer cannot be determined by this court upon the record. No opinion is therefore expressed in regard to it. Costs awarded to appellants.

WADE and McDONOUGH, JJ., and JEPPSON, District Judge, concur.

HENRIOD, J., not participating.

CROCKETT, J., being disqualified, did not participate.