305 P.2d 486

Edd E. PROVONSHA and Isabella B. Provonsha, George H. Patterson, Willana C. Patterson, Lula M. Whitney and Elizabeth Anne Whitney, Plaintiffs and Appellants,

v.

Emet T. PITMAN, Hanna B. Pitman, Mattie A. Garlett and Standard Uranium Company, a corporation, Defendants and Respondents.

No. 8503.

Supreme Court of Utah.

Jan. 3, 1957.

fendants by acquiescence, to a strip of land situate between an old fence and a course described in instruments of transfer. Affirmed with modification. Costs to defendants.

Plaintiffs urge 1) that the decision was unsupported by the evidence and was the product of preconceptions of the trial judge as to where the boundary should be, 2) that the court ignored an official town plat, 3) that the decision was unjust and inequitable, and 4) that the fence did not fix a boundary by acquiescence.

We believe the decision was supported by the evidence, and we cannot go along with the idea that it was motivated by preconceived notions as to where the boundary should have been, since the evidence pointed up to support such an idea had to do with some line other than the fence line. As to the court's ignoring a town plat, there seems to be little significance to such contention even assuming it to be true, since the decision fixed a line based on a fence, not a town plat. However, two findings of the court possibly could lead to controversy as to property not involved here, and since those findings were unnecessary for the decision, we return the case with instructions to vacate findings Nos. 9 and 10. As to plaintiffs' contention that the judgment was unjust and inequitable, we disagree.

Stewart, Cannon & Hanson, Salt Lake City, for appellants.

Melich & Ruggeri, Moab, for respondents.

HENRIOD, Justice.

Appeal from a no cause of action judgment in a quiet title suit where plaintiffs claimed title by metes and bounds and de-

The sole problem here is whether the facts reasonably support the conclusion that a boundary by acquiescence was established over the years. We think they do. In 1884, the strip of disputed property, which protrudes northward onto the metes and bounds description claimed by plaintiffs, a distance of 15.1′ at one end and 7.5′ at the other, running 462′ east and west, was included in a 160 acre tract that was sold for $1,000 or for $6.25 per acre. The strip contained ⅒ acre and areawise represented about 65¢ of the purchase price. Later, in 1897, a portion of the tract, including the strip mentioned, was sold and the strip represented about $7.75 of the price. From at least 1898 on, and to date, a barbedwire fence has remained, been repaired or replaced several times on the same line, always plainly visible and always used as a physical barrier up to which adjoining owners apparently have occupied and used the respective lands on either side thereof. The disputed area represents about 5% of the land plaintiffs claim. We note these facts not only to show the almost infinitesimal value of the land at that time, but to suggest the likelihood that, in those early days when land was literally dirt cheap in the area, persons reasonably may have preferred to establish what might have been a not too accurate boundary and to have been content that it should be the dividing line, rather than to expend a sum that undoubtedly would have exceeded the value of the land involved. Certainly, in this case, although it does not appear one way or the other in the record, the fence itself must have cost many times the value of the disputed area.

The fence in this case appears to have been erected with the intention of dividing a block 462 feet square after an 1896 divorce divided the property equally between the spouses, it having been recorded to only one person prior thereto. Since 1898, the year when the testimony first identified the fence's existence, the land on both sides has changed hands a good many times, yet there is nothing in the record to indicate that since that time and until the mid-thirties, or for about 35 years, any owners considered the fence as anything but the boundary of their lands, or that any one mistakenly believed it was on the true line, or that anyone complained about the fence or its repair or replacement on a number of occasions. In 1935, a new owner claimed the fence was off center, and had a survey made which bore him out, but neither he nor his successors did more than talk about it until this suit in 1955, during which time they also occupied and used the land up to the fence, so that the fence has separated the litigants' and their predecessors' properties for about 58 years. Furthermore, prior to 1930, a permanent improvement in the form of a shed was erected on the

disputed area, one wall being on the fence line, and there the shed remained in use until this lawsuit.

 Plaintiffs rely heavily on conversations, incidents and understandings of various and comparatively recent owners, which arose after the fence had been in place for some 35 or more years. There appears to be no evidence in the record indicating, that during that period there was anything other than an occupation and use of lands on each side of the fence, and up to it, without incident of any kind, except to repair or replace the fence. If by that time a boundary by acquiescence had been established, as we think it had, under principles heretofore announced by this court, succeeding grantees could not marshall their disagreements or misunderstandings to destroy that established boundary.

The cases are not entirely in harmony, but an examination thereof and the facts therein stated make it appear to us that in the instant case it is inescapable to conclude other than that a boundary by acquiescence was created. An exhaustive collation and review of the Utah cases relating to boundaries by acquiescence most capably was documented by Mr. D. Martin Cook in 3 Utah Law Review 504, (1953).[1]

McDONOUGH, C. J., and CROCKETT, WADE and WORTHEN, JJ., concur.

1. Also, reference is made to cases collected in Brown v. Milliner, 120 Utah 16, 232 P.2d 202.