Mack HALLADAY and Merle Halladay,
Plaintiffs and Appellants,

v.

Madge CLUFF, Perry K. Bigelow and
Norma G. Bigelow, Defendants and
Respondents.

No. 18032.

Supreme Court of Utah.

May 1, 1984.

Brent D. Young, Provo, for plaintiffs and appellants.

M. Dayle Jeffs, Provo, for Cluff.

S. Rex Lewis, Provo, for Bigelow.

OAKS, Justice:

This is an appeal from a judgment relying on boundary by acquiescence to quiet title to a 52.5- by 118-foot parcel of real property in the city of Provo. The issues are whether a showing of uncertainty or dispute on the location of a boundary line is necessary to the application of boundary by acquiescence, and, if so, what is meant by "uncertainty" and who has the burden of proving it.

The property in issue is located in Provo City and is shown as parcel A–B–C–D on the accompanying map. From 1930 to the present, there has been a fence along lines E–A–B–F. It extends approximately 52 feet behind the rear property lines (C–D) of lots 1 and 2. This extension apparently resulted from an assumption that the 231-foot depth of these lots was measured from the edge of the street instead of from the points across 100 South Street shown on the legal descriptions.

The fence was clearly visible when the Bigelows purchased lot 1 in 1947 and when Cluff acquired lot 2 in 1948. The Halladays acquired lot 3, which contains most of the disputed parcel, in 1958. (They purchased lot 5 in 1950 and lot 4 in 1961.)

When the Bigelows and Cluff purchased lots 1 and 2, they assumed their properties extended to the back fence at line A–B. Acting accordingly, they cultivated gardens and built and maintained several chicken coops on their respective portions of parcel A–B–C–D. Bigelows had a survey made in 1956 that placed their rear boundary near line C–D, but they and Cluff apparently believed the survey to be erroneous. In

1975, Cluff obtained a plat that placed her rear boundary at line C–D.

During the period of their adjoining property ownership, the Halladays maintained that Bigelows' and Cluff's true

CENTER STREET

4 HALLADAY

5 HALLADAY

A     B

3

D     C

North

2 CLUFF

1 BIGELOW

E

F

Map not drawn to scale

—x—x—x— fence

100 SOUTH STREET

boundaries were at line C–D. Mr. Halladay informed Mr. Bigelow of this fact on one occasion in the 1950s and told him not to use the disputed parcel on several occasions in the 1970s. Halladays had no discussions with Cluff regarding the property line until shortly before this litigation commenced. Halladays made very little use of lot 3.

In 1979, the Halladays commenced this suit to quiet title to parcel A–B–C–D. The

Bigelows and Cluff counterclaimed, and the district court sustained their ownership of this parcel under the doctrine of boundary by acquiescence. On appeal, the Halladays seek to overturn that decision on the basis that boundary by acquiescence cannot be applied where there was no dispute or uncertainty concerning the location of the boundary. We agree and reverse with directions to quiet title in the Halladays, the record owners.

## I. UNCERTAINTY OR DISPUTE AS AN INGREDIENT IN BOUNDARY BY ACQUIESCENCE

The doctrine of boundary by acquiescence has been the source of considerable confusion and controversy among judges, lawyers, and landowners in this state. *King v. Fronk,* 14 Utah 2d 135, 139, 378 P.2d 893, 895 (1963); Note, *Boundary by Acquiescence,* 3 Utah L.Rev. 504, 504 (1953). *See generally* Note, *Boundaries by Agreement and Acquiescence in Utah,* 1975 Utah L.Rev. 221. One of the primary areas of confusion is the requirement of the "presence or absence of dispute and/or uncertainty as to boundary." *King v. Fronk,* 14 Utah 2d at 139, 378 P.2d at 895.

■ Much of the confusion has resulted from the intermingling of rules governing boundary by acquiescence and boundary by parol agreement. Annot., 7 A.L.R. 4th 53, 59 (1981). Both of these doctrines identify circumstances in which landowners can establish boundary lines without a written agreement. Originally, the two were easily distinguishable because boundary by parol agreement required an express parol agreement with respect to a boundary but no period of acquiescence, while boundary by acquiescence required a lengthy period of acquiescence but no express parol agreement. *Hummel v. Young,* 1 Utah 2d 237, 239–40, 265 P.2d 410, 411 (1953); *Brown v. Milliner,* 120 Utah 16, 25, 232 P.2d 202, 207 (1951); Note, 1975 Utah L.Rev., *supra,* at 224.[1]

With time, the distinctions between boundary by agreement and boundary by acquiescence became blurred. The requirement of an express parol agreement began to be articulated among the elements of boundary by acquiescence, although this Court said that "the law will *imply* an agreement fixing the boundary as located, if it can do so consistently with the facts appearing ...." *Hummel v. Young,* 1 Utah 2d at 240, 265 P.2d at 411. Similarly, the requirement of a long period of acquiescence was applied to boundary by agreement. *Hobson v. Panguitch Lake Corp.,* Utah, 530 P.2d 792, 794 (1975); *Blanchard v. Smith,* 123 Utah 119, 121, 255 P.2d 729, 730 (1953). In various opinions, the Court even referred to boundary by agreement and boundary by acquiescence as if they had merged into one. *See, e.g., Hobson v. Panguitch Lake Corp.,* 530 P.2d at 794 (reference to "the doctrine of boundary by acquiescence or agreement"); *Carter v. Lindner,* 23 Utah 2d 204, 460 P.2d 830 (1969) (reference to "boundary line by acquiescence under an oral agreement"); Note, 1975 Utah L.Rev., *supra,* at 222–23.

The confusion stemming from the intermingling of boundary by agreement and boundary by acquiescence has carried over to the subject of uncertainty or dispute over the boundary. Originally, this was mentioned as a requirement only in connection with boundary by agreement. *Rydalch v. Anderson,* 37 Utah 99, 109, 107 P. 25, 29 (1910). In that context, uncertainty or dispute over the boundary would precede and provide the motivation for the oral agreement. In 1928, this Court began to refer to uncertainty or dispute as a matter to be considered in boundary by acquiescence. *Tripp v. Bagley,* 74 Utah 57, 66–72, 276 P. 912, 916–18 (1928). Thereafter, the opinions of this Court frequently referred to a showing of uncertainty or dispute as an essential ingredient in the application of the doctrine of boundary by acquiescence. *Madsen v. Clegg,* Utah, 639 P.2d 726, 728–29 (1981); *Leon v. Dansie,* Utah, 639 P.2d 730, 731 (1981); *Wright v. Clissold,* Utah, 521 P.2d 1224, 1226 (1974); *Universal Investment Corp. v. Kingsbury,* 26 Utah 2d 35, 37–38, 484 P.2d 173, 174–75 (1971); *Glenn v. Whitney,* 116

1. The period of acquiescence required for boundary by acquiescence has not been quantified into an exact period of time; it depends on the circumstances of the particular case. This Court's most recent discussion identifies it as a "long period of time ... generally related to the common law prescriptive period of 20 years; and only under unusual circumstances would a lesser period be deemed sufficient." *Hobson v. Panguitch Lake Corp.,* Utah, 530 P.2d 792, 795 (1975) (10 years held insufficient). *Accord King v. Fronk,* 14 Utah 2d 135, 141–42, 378 P.2d 893, 897 (1963).

Utah 267, 272–73, 209 P.2d 257, 260 (1949); *Home Owners' Loan Corp. v. Dudley,* 105 Utah 208, 219, 141 P.2d 160, 166 (1943); *Peterson v. Johnson,* 84 Utah 89, 93, 34 P.2d 697, 698–99 (1934). Although there are admittedly some other opinions throughout this period that make no mention of a showing of uncertainty or dispute,[2] we have concluded from the more recent cases and from the clear weight of authority that the relevance of this ingredient is settled in our law. *See generally* Annot., 69 A.L.R. 1430, 1501–04 (1930), supplemented in 113 A.L.R. 421, 436 (1938); 12 Am.Jur.2d *Boundaries* §§ 78–79, 83, 88 (1964).

The difficult issues in respect to uncertainty or dispute as an ingredient in boundary by acquiescence concern the meaning of these terms and who has the burden of proof. As demonstrated hereafter, our opinions have not given consistent answers to these questions. The contest is typically between interests that are both worthy— the desire to confirm boundaries that have apparently been recognized *on the ground* over a long period of time and the desire to enhance reliance on the property dimensions shown *in the county records.* The law clearly gives precedence to the record title, with boundary by acquiescence being an exception, but the conditions of that exception have not been settled with clarity or adhered to with consistency, in part because of the bewildering variety of factual circumstances in which the question arises.

In general, when survey information is reasonably available (such as when reliable survey control points are accessible to the land and survey costs are not disproportionate to the value of the land) so that it is reasonable to expect the parties to locate their boundary on the ground by surveys, the courts should be less willing to apply the doctrine of boundary by acquiescence.

This reasonable availability of survey information obviously varies from place to place and from time to time. However, it can be said in general that survey information is more available and its cost is less likely to be disproportionate in relation to the value of the land in city and platted areas than in rural or wilderness areas. It can also be said in general that technological advances in survey techniques (as well as in the accuracy and accessibility of record title information) is tipping the scales toward greater reliance on record title information and lesser reliance on boundary by acquiescence.[3] The law should conform to those realities.

## II. THE MEANING OF UNCERTAINTY OR DISPUTE OVER BOUNDARY

In some earlier cases, uncertainty or dispute had to be traceable to an objectively determinable ambiguity in a deed or survey, so that the true location of the boundary could not be readily ascertained. It was not established by proving that neither adjoining landowner knew the exact location of the boundary, because "lack of knowledge as to the location of the true boundary is not synonymous with uncertainty." *Glenn v. Whitney,* 116 Utah at 273, 209 P.2d at 260; Note, 1975 Utah L.Rev., *supra,* at 231–32. However, later cases rejected this objective measurement in favor of a subjective test in which "a boundary line may be 'uncertain' or 'in dispute' even though it is capable of being readily ascertained." *Ekberg v. Bates,* 121 Utah 123, 127, 239 P.2d 205, 207 (1951), *quoting Willie v. Local Realty Co.,* 110 Utah 523, 531, 175 P.2d 718, 723 (1946). Uncertainty or dispute was much easier to prove under this rule, which therefore had the effect of increasing the availability of

---

**2.** *E.g., Goodman v. Wilkinson,* Utah, 629 P.2d 447 (1981); *Monroe v. Harper,* Utah, 619 P.2d 323 (1980); *Hales v. Frakes,* Utah, 600 P.2d 556 (1979). *See also Brown v. Milliner,* 120 Utah at 25, 232 P.2d at 207 (uncertainty or dispute characterized as the "fiction" on which boundary by acquiescence is grounded).

**3.** When boundary by acquiescence was first introduced in Utah almost a century ago, *Switzgable v. Worseldine,* 5 Utah 315, 15 P. 144 (1887), much of the state had not been surveyed and searches of record title may have been difficult to conduct.

boundary by acquiescence and decreasing reliance on the record title.

After carefully considering our previous decisions on this question, we return to the more rigorous definition set forth in *Glenn v. Whitney, supra,* and hold that "dispute" is not proved by a mere difference of opinion, and "uncertainty" is not proved by a mere lack of actual knowledge of the true location of the boundary. This is the thrust of our recent decisions on this subject, *e.g., Madsen v. Clegg, supra,* and it is the holding of the better-reasoned cases in other jurisdictions. *E.g., Buza v. Wojtalewicz,* 48 Wis.2d 557, 564–67, 180 N.W.2d 556, 560–61 (1970); *Hartung v. Witte,* 59 Wis. 285, 298–300, 18 N.W. 175, 180–81 (1884); *Fry v. Smith,* 91 Idaho 740, 741–42, 430 P.2d 486, 487–88 (1967). Finally, the ingredient that has been called "dispute or uncertainty" should be measured against an objective test of reasonableness and should therefore more appropriately be called "objective uncertainty."

Under the rule as we have defined it here, the property line shown on the record title cannot be displaced by another boundary unless it is shown that during the period of acquiescence there was some objectively measurable circumstance in the record title or in the reasonably available survey information (or other technique by which record title information was located on the ground) that would have prevented a landowner, as a practical matter, from being reasonably certain about the true location of the boundary. By the same token, a claimant cannot assert boundary by acquiescence if he or his predecessors in title had reason to know the true location of the boundary during the period of acquiescence.

Our decision to measure compliance with the requirement of "objective uncertainty" by whether the landowner, as a practical matter, could be reasonably certain about the true location of the boundary on the ground is supported by two policy considerations.

First, by allowing less latitude for boundary by acquiescence, we minimize conflict with the objectives of our statute of frauds, which forbids the transfer of interests in real property without a written conveyance. U.C.A., 1953, § 25–5–1; *Madsen v. Clegg,* 639 P.2d at 728–29; *Tripp v. Bagley,* 74 Utah at 68–72, 276 P. at 916–18.

Second, an objective test, which minimizes reliance on boundary by acquiescence, corresponds more closely to the purposes of that doctrine. This Court has recognized that "[t]he very reason for being of the doctrine of boundary by acquiescence or agreement is ... [to avoid] stirring up controversy," *Hobson v. Panguitch Lake Corp.,* 530 P.2d at 794, to prevent litigation, and to promote repose of title and stability in boundaries. *Hales v. Frakes,* 600 P.2d at 559. These purposes are best furthered if those who purchase, use, or sell real property must rely on descriptions in deeds and reasonably available survey information to settle boundary questions in the first instance. Only when it is not reasonable to expect landowners to ascertain the true location of the boundary by this manner should landowners be allowed to claim boundary by acquiescence. *See Hartung v. Witte,* 59 Wis. at 298–300, 18 N.W. at 180–81. Allowing a claimant to forego reasonably available means of determining the true boundary and to assert his lack of "actual knowledge" as a basis for boundary by acquiescence fosters uncertainty on the location of boundaries and magnifies the number of instances in which landowners have to resolve disputes by litigation.

Boundary by acquiescence remains a viable means of establishing a boundary where there is objective uncertainty in the location of the true boundary that cannot reasonably be resolved by reference to the record title and by use of reasonably available survey information. For example, following are instances of objectively measurable uncertainties in which boundary by acquiescence would be appropriate if its other requirements were met: inability to locate monuments established in original

survey, *Holmes v. Judge,* 31 Utah 269, 271, 87 P. 1009, 1010 (1906); internal inconsistencies in plat, *Young v. Hyland,* 37 Utah 229, 233, 108 P. 1124, 1126 (1910); no official or original plat or survey by which the boundary line can be located, *Jensen v. Bartlett,* 4 Utah 2d 58, 60, 286 P.2d 804, 806 (1955); disagreement among different surveyors on location of boundary line, *id.;* landmarks referenced in deeds have disappeared, *Joaquin v. Shiloh Orchards,* 84 Cal.App.3d 192, 148 Cal.Rptr. 495, 496 (1978); uncertainties or disputes created by conflicting terms in deeds, such as overlapping descriptions, *Motzkus v. Carroll,* 7 Utah 2d 237, 239, 322 P.2d 391, 393 (1958); or metes and bounds descriptions that do not close, *Nunley v. Walker,* 13 Utah 2d 105, 110–11, 369 P.2d 117, 120–21 (1962). Boundary by acquiescence should also be available where there are other inconsistencies that create reasonable doubt in the meaning of the record title or in its application to the actual on-the-ground location of the property identified in the record.[4]

### III. BURDEN OF PROOF OF OBJECTIVE UNCERTAINTY

An early line of cases placed the burden of proving uncertainty or dispute on the party claiming boundary by acquiescence. *Peterson v. Johnson,* 84 Utah at 93–94, 34 P.2d at 698–99; *Home Owners' Loan Corp. v. Dudley,* 105 Utah at 219–20, 141 P.2d at 166; *Willie v. Local Realty Co.,* 110 Utah at 530–32, 175 P.2d at 722–23; *Glenn v. Whitney,* 116 Utah at 272–73, 209 P.2d at 260. For example, since the fence in *Home Owners' Loan Corp. v. Dudley, supra,* "was not shown to have been established to settle any dispute or to establish any boundary line, the true location of which was unknown or even uncertain," boundary by acquiescence was held to have failed. 105 Utah at 219, 141 P.2d at 166.

A few years later, however, in *Brown v. Milliner, supra,* this Court rejected the ruling in this line of cases, stating:

In some of the opinions of this court on the subject of disputed boundaries, there are statements to the effect that the location of the true boundary must be uncertain, unknown or in dispute before an agreement between the adjoining landowners fixing the boundary will be upheld, citing *Tripp v. Bagley,* supra, in support thereof.... But the *Tripp* case does not require a party relying upon a boundary which has been acquiesced in for a long period of time to produce evidence that the location of the true boundary was ever unknown, uncertain or in dispute. That the true boundary was uncertain or in dispute and that the parties agreed upon the recognized boundary as the dividing line will be implied from the parties' long acquiescence.

120 Utah at 27, 232 P.2d at 208. Numerous decisions after *Brown v. Milliner* used a similar approach, either by omitting this subject from the list of elements to establish the doctrine or by requiring the defending landowner to prove "the absence of a dispute or uncertainty in fixing the boundary" as a means of rebutting a presumption of boundary by acquiescence. *Wright v. Clissold,* 521 P.2d at 1226. *See, e.g., Universal Investment Corp. v. Kingsbury,* 26 Utah 2d at 37, 484 P.2d at 174; *King v. Fronk,* 14 Utah 2d at 138, 378 P.2d at 895; *Motzkus v. Carroll,* 7 Utah 2d at 242–43, 322 P.2d at 395–96.

However, in *Florence v. Hiline Equipment Co.,* Utah, 581 P.2d 998 (1978), this Court was again squarely faced with the question of who should carry the burden of proof. In holding that boundary by acquiescence did not apply, the trial court had stated as a conclusion of law "[t]hat the doctrine of boundary by acquiescence arises only when the true boundary is either unknown, uncertain, or in dispute, none of which was proved in this case." *Id.* at 1000. The Court, in an opinion authored by Justice Hall (only one justice dissenting), affirmed that decision and its

---

**4.** Parties also remain free to settle uncertainties or disputes through boundary by agreement or by the use of quitclaim deeds or other legal documents. Disputants may also acquire property through adverse possession, as provided by statute. §§ 78–12–2 to –21.

statement of the law, noting that it was "consistent with this Court's prior holdings." *Id.* The *Florence* holding was apparently ignored (but not questioned) in three subsequent cases.[5] Then, in rejecting boundary by acquiescence, our two most recent cases discuss the absence of uncertainty or dispute in conjunction with the affirmative requirements of the doctrine and contain no intimation that this subject is part of the burden of a record landowner seeking to rebut a presumption. *Leon v. Dansie,* Utah, 639 P.2d 730 (1981); *Madsen v. Clegg,* Utah, 639 P.2d 726 (1981). In the latter case, this Court stated: *"In the absence of any initial uncertainty* concerning the ownership of the property in question, *the doctrine of boundary by acquiescence has no application."* *Id.* at 729 (emphasis added).

The question of burden of proof is about evenly balanced on the authorities. On policy, both positions are supportable by persuasive arguments. The allocation of the burden of proof could therefore depend on what one assumes about whether it is the record owner or the claimant by acquiescence who has superior access to facts about events long past, but that basis of decision is unacceptable because either assumption could be made and neither could be justified empirically. In this circumstance, we are especially well advised to limit our rule of law to the facts before us.

■■■ This case involves property in the city of Provo, where survey information is readily available. It is therefore reasonable for the law to require the parties in this case to locate their property lines on the ground by means of the record title and reasonably available survey information rather than by acquiescence in a fence line or other identifiable points on the ground. Consequently, as to this circumstance we

hold that the party claiming boundary by acquiescence has the burden of proving objective uncertainty as part of the prima facie elements of the doctrine of boundary by acquiescence.[6] Notwithstanding this allocation of the burden of proof, the record landowner may, of course, conclusively negate the existence of objective uncertainty by proving that the claimant or his predecessors in title had reason to know the location of the true boundary before the expiration of the period of acquiescence.

## IV. THE FACTS OF THIS CASE

We are mindful that the district court had to rule on the facts of this case in the face of the contradictory authorities we have discussed. Since we have now undertaken to clarify the rules pertaining to this case, our task is much easier.

■■■ Although there are no direct findings relating to the requirement of uncertainty, the court did find that "[t]here is no record title in either [the Bigelows or Cluff] to the property in dispute." Neither of these claimants challenges the factual basis for that finding. In addition, there is no evidence of any objectively measureable circumstance in the record title or in the reasonably available survey information that would have prevented the claimants from using these means to ascertain the true boundary on the ground. On the contrary, the evidence clearly shows that both claimants had ready access to deeds and had actually examined surveys clearly establishing the Halladays' record title to the property in dispute. Consequently, the doctrine of boundary by acquiescence is inapplicable as a matter of law in the circumstances of this case. The decree relying on that doctrine in quieting the claimants' title to parcel A–B–C–D must therefore be reversed.[7]

---

5. These cases, cited note 2 *supra,* do not list uncertainty or dispute as an affirmative requirement of boundary by acquiescence.

6. We express no opinion on whether this allocation of the burden of proof would apply to property not located in a city or platted area.

7. Our resolution of this issue makes it logically unnecessary for us to rule on the other issues tendered by appellants.

We also forego answering the numerous arguments and charges in the dissenting opinion. We do caution that the meaning and intent of this opinion should not be judged by the content of the dissent, because we do not acquiesce in

The decree is reversed, and the case is remanded to the district court for the entry of a new decree in conformity with this opinion. No costs awarded.

HALL, C.J., and STEWART and DURHAM, JJ., concur.

HOWE, Justice (concurring and dissenting):

I concur in the result on the limited ground that both the Bigelows and the Cluffs, who rely on boundary by acquiescence, had actually examined surveys during the period of acquiescence showing the Halladay's ownership of the property in dispute. Once they examined the surveys, they had reason to know that the line acquiesced in was not the true line and they could acquire no rights thereafter. In *Tripp v. Bagley*, 74 Utah 57, 276 P. 912 (1928), this Court held the doctrine of boundary by acquiescence to be not applicable because the evidence affirmatively demonstrated that when the boundary fence was erected, the parties knew that it was not on the true line, and further, they could not have believed it to be on the true line since the true line was straight north and south along a section line, whereas the boundary fence had angle turns in it like a dog's leg. This requirement was again recognized in *Willie v. Local Realty Co.*, 110 Utah 523, 175 P.2d 718 (1946). More recently, in *Florence v. Hiline Equipment Co.*, Utah, 581 P.2d 998 (1978), this Court in holding the doctrine of boundary by acquiescence not applicable, noted that both the joining owners knew where the true boundary was located and thus they did not treat a fence which ran between their properties as marking the boundary. Similarly, in *Madsen v. Clegg*, Utah, 639 P.2d 726 (1981), we stressed the fact that the fence running between the two properties ran in a straight line, whereas the parties' deed

lines which coincided along this course had two right-angle turns in them. In all of these decisions the parties had reason to know that the acquiesced line was not the true line, or that fact was implicit. The doctrine of boundary by acquiescence was held in each case to be not applicable.

I regard most of the balance of the majority opinion to be dicta and an unwarranted assault upon boundary by acquiescence as it has been developed by the cases of this Court over the past 80 years. I dissent from much of it, especially from the announcement that boundary by acquiescence should be further restricted and not applied where the adjoining land owners could have or should have had their properties surveyed before the boundary was marked on the ground. I cannot subscribe to that announcement for the following reasons.

The doctrine of boundary by acquiescence has always been very restrictively applied. Since it operates to take from the fee owner a small strip of his land, it has never been given broad application. Only in those exceptional circumstances where all four of the following elements were present has it been employed: (1) occupation up to a visible line marked by monuments, fences or buildings; (2) mutual acquiescence in the line as a boundary; (3) for a long period of time; (4) by adjoining land owners. *Goodman v. Wilkinson*, Utah, 629 P.2d 447 (1981). Since the doctrine was first announced in *Holmes v. Judge*, 31 Utah 269, 87 P. 1009 (1906), it has been applied only in approximately 25 cases reaching this Court (see appendix). The effect of the announcement by the majority opinion is to sub silentio overrule most of those cases. In a thoughtful and well-considered opinion written by Justice Frick of this Court in *Holmes v. Judge*, supra, it was pointed out that the doctrine

the dissent's interpretation of this opinion. To cite only one *example*, a boundary located on a surveyed line *could* qualify for boundary by acquiescence, even though a subsequent survey showed the original survey to have been in error. A rule of law that is intended to encourage landowners to rely on record title information and reasonably available survey information will not be applied to penalize a landowner who has done just that. If the original survey was in error, that is a clear instance of objective uncertainty, and boundary by acquiescence will apply if its other elements are proved.

of boundary by acquiescence rests upon sound public policy; that it was a doctrine of repose with the view of quieting titles and preventing strife and litigation concerning boundaries. Many years later, Justice Crockett in *Hobson v. Panguitch Lake Corp.*, Utah, 530 P.2d 792 (1975), endorsed this same public policy when he said:

> That in the interest of preserving the peace and good order of society (sic) the quietly resting bones of the past, which no one seems to have been troubled or complained about for a long period of years, should not be unearthed for the purpose of stirring up controversy, but should be left in their repose.

Now the majority seems to say that this long recognized public policy should be abandoned; that the bones of the past may be unearthed and controversy permitted if when the boundary was marked on the ground (by fences, trees, etc.) 30, 40 or 50 years ago it was feasible for the then owners to have surveyed their properties which supposedly would have resulted in the placement of the boundary on the deed line. There are three major difficulties with that approach. In the first place, a survey may have been actually made and the boundary marked on that line. Because of the lapse of many years, no one who was then present may be alive or available. Just because a recent survey shows the marked boundary to be incorrectly placed does not prove that the then owners, many years ago, did not have a survey made on which they relied in establishing the marked boundary. As finer and more precise instruments of survey are developed, property lines established in accordance with earlier surveys may often be shown to be out of place by later surveys. Under the rule adopted by the majority, apparently the later survey would govern and a marked boundary which may well have been established in reliance on the earlier survey would yield. In *Wacker v. Price*, 70 Ariz. 99, 216 P.2d 707 (1950), the Court emphatically rejected such a suggestion and quoted with approval the following statement appearing in a Michigan case, *Diehl v. Zanger*, 39 Mich. 601 (1878):

Nothing is better understood than that few of our early plats will stand the test of a careful and accurate survey without disclosing errors. This is as true of the government surveys as of any others, and if all the lines were now subject to correction on new surveys, the confusion of lines and titles that would follow would cause consternation in many communities. Indeed, the mischiefs that must follow would be simply incalculable, and the visitation of the surveyor might well be set down as a great public calamity. But no law can sanction this course.

The majority assures us that a new survey would not necessarily be allowed to upset a boundary set on an earlier survey. But after the lapse of many years, no one may know that an earlier survey was made. Thus, the later survey will be followed and the boundary, long recognized, will be moved.

Secondly, the boundary dispute is here and now. It does little good to reflect as to what the then owners 30, 40 or 50 years ago might have done and disregard entirely the conduct of the owners and their successors since that time in acquiescing in the markers on the ground. In most cases, the acquiescence is an unconscious act with no thought being given during the period of acquiescence to the boundary, let alone with surveying it. Thirdly, this Court should not embark upon the impossible task of trying to determine in each case whether the owners 30, 40 or 50 years ago could have afforded a survey had they then given thought to the boundary or whether the value of the property at that time would have been worth it, depending upon whether the boundary dispute arises "in city and platted areas" or whether it arises in "rural or wilderness areas." The answers to such inquiries will be impossible to obtain. The inquiry apparently will be subjective. Yet in many cases the builders of the marked boundary will be dead or will have long since sold their interest in the property and be unavailable. Our cases on boundary by acquiescence for the past 80

years have approached boundary disputes with the view that it is not unjust in certain cases to require disputing owners to live with what they and their predecessors have acquiesced in for a long period of time. Today the majority turns its back on that philosophy and now wants to explore and decide boundary cases on what might have been. This approach is not practical and I believe will prove to be unworkable.

*Holmes v. Judge*, supra, and its progeny have been consistent in rejecting the notion that boundary by acquiescence should only be applied when the true line could not have been ascertained by a survey. This contention was put to rest in an earlier case, *Young v. Hyland*, 37 Utah 229, 108 P. 1124 (1910). Two years later, in *Binford v. Eccles*, 41 Utah 453, 126 P. 333 (1912), Chief Justice Frick again dismissed that contention in the following words:

> Appellant would thus be permitted to unsettle boundaries which by the adjoining land owners had been recognized and acquiesced in for approximately a quarter of a century. *Any rule of law which would permit such a result would be pernicious, and in the long run would produce strife and litigation, and in the nature of things would often result in injustice if not oppression.* [Emphasis added.]

More recently in *Willie v. Local Realty Co.*, supra, and in *Ekberg v. Bates*, 121 Utah 123, 239 P.2d 205 (1951), this Court again rejected the suggestion that boundary by acquiescence should not apply unless it could be demonstrated that the true line could not be ascertained by a survey. The majority advocates that we "return" and now follow an obscure statement made in *Glenn v. Whitney*, 116 Utah 267, 209 P.2d 257 (1949), that "lack of knowledge as to the location of the true boundary is not synonymous with uncertainty." The subject of surveying was not discussed in that case and it is this writer's opinion that that statement does not refer to surveying. However, if that statement means that there can be no uncertainty in the absence of a survey, it is out of harmony with every other case of this Court on the subject and

should be summarily disavowed. The statement was dicta since the evidence showed that the person who had erected the old fence did not own land on either side of it and boundary by acquiescence clearly did not apply.

In a surprising turnabout in thinking and public policy, the majority opinion now proclaims that the stirring up of controversy is avoided, litigation is prevented and repose of title and stability in boundaries is promoted if "those who purchase, use or sell real property may rely on descriptions in deeds and reasonably available survey information to settle boundary questions in the first instance." As I have already pointed out, generally reliance on descriptions in deeds and available survey information is salutary. However, in those rare instances where the elements of boundary by acquiescence are present, an exception has been recognized and disputing neighbors are not permitted to depart from that which they have long acquiesced in. This does no mischief to those who purchase, use or sell real property as the majority opinion maintains since it is not unfair to charge buyers with taking notice of a marked boundary which is there to be seen in plain sight. Boundary by acquiescence cases often arise when one adjoining land owner decides to sell his property and a survey is made by him or his buyer revealing that the marked boundary encroaches a few inches or sometimes a few feet. Rather than disturbing the long acquiesced in boundary, the law has been and is that the boundary shall not be disturbed but the buyer may protect himself by requiring a reduction in the purchase price by the vendor to compensate for the shortage of property. If fortuitously the survey shows that the seller has an excess of property, the buyer reaps the bargain of it. Either way the old boundary is preserved and strife and litigation is prevented. No innocent person is harmed. Only that owner who has slept on his rights is made to live with that which he has long accepted.

I dissent from many statements made in part I of the majority opinion. First, proof

of uncertainty or dispute is not and has never been an "ingredient" or element of a cause of action for boundary by acquiescence. *Tripp v. Bagley,* supra, cited by the majority does not so hold. Uncertainty and dispute were discussed in that case in connection with an *express* parol boundary agreement where it must be proved to overcome the bar of the statute of frauds. The party relying on the oral agreement must show that the location of true boundary was unknown, uncertain or disputed when the agreement was made; otherwise the oral agreement is invalid as an attempt by the contracting parties to transfer ownership of real estate without a writing. The plaintiff in that case also relied upon the doctrine of boundary by acquiescence but this Court held it to be not applicable for the reasons already stated in the first paragraph of this opinion, viz., when the boundary fence was erected the parties knew that it was not on the true line because of its angle turns. The Court did not hold that a party relying upon boundary by acquiescence had to affirmatively show that the boundary was erected following uncertainty or dispute. Such a requirement would be entirely foreign to the doctrine of boundary by acquiescence because the basis of the doctrine is that the law *implies* that there once existed uncertainty and dispute and that the adjoining owners mutually agreed upon the marked boundary in settlement. *Holmes v. Judge,* supra.

If there was ever any question about this proposition, our opinion in *Brown v. Milliner,* 120 Utah 16, 232 P.2d 202 (1951), decided many years after *Tripp v. Bagley,* supra, clarified that matter and put it to rest:

> In some of the opinions of the court on the subject of disputed boundaries, there are statements to the effect that the location of the true boundary must be uncertain, unknown or in dispute before an agreement between the adjoining land owners fixing the boundary will be upheld, citing *Tripp v. Bagley,* supra, in support thereof. Such statements should be understood to mean that if the location of the true boundary line is

known to the adjoining owners, they cannot by parol agreement establish the boundary elsewhere. As was pointed out in the *Tripp* case, such an agreement would be in contravention of the statute of frauds. But the *Tripp* case does not require a party relying upon a boundary which has been acquiesced in for a long period of time to produce evidence that the location of the true boundary was ever unknown, uncertain or in dispute. That the true boundary was uncertain or in dispute and that the parties agreed upon the recognized boundary as the dividing line will be implied from the parties' long acquiescence. *Roberts v. Brae,* 5 Cal.2d 356, 54 P.2d 698. In *Holmes v. Judge,* supra, this court, speaking through Mr. Justice Frick, set forth the following requirements necessary to establish a boundary by acquiescence: The line must be open, visible, marked by monuments, fences or buildings and recognized as the boundary for a long term of years. It was expressly stated by the court in that case that there was no evidence how the fence and building which were recognized as the boundary came to be erected, or that there was ever any dispute between the adjoining owners concerning the location of the true boundary, or that any question was ever raised as to its location until shortly before the plaintiff commenced his action.

This explanation was again set out in haec verba in *Motzkus v. Carroll,* 7 Utah 2d 237, 322 P.2d 391 (1958), where we expressly rejected the contention that the party relying on the long recognized boundary must prove that it was once unknown, uncertain or in dispute. Justice Wade, writing for the Court, stated:

> [I]t is clear that where a party by evidence establishes a long period of acquiescence in a fence as marking the boundary line between two tracts, he is *not required to also produce evidence* that the location of the true boundary line was ever unknown, uncertain or in dispute. The establishment of a long period

of acquiescence in a fence as marking the boundary line between two tracts by the respective owners gives rise to a presumption that the true boundary line was in dispute or uncertain, which places, at least, the burden of producing evidence that there was no dispute or uncertainty but that the true boundary line was known to the respective owners on the party claiming that such was the fact. Where, as here, there is evidence on that question other than the proof of acquiescence in the fence as marking the boundary line for the required long period of time the trial court must find that the boundary line by acquiescence has been established.

(Emphasis added.) Justice Wade cited as his authority *Brown v. Milliner*, supra, which in turn relied on the original acquiescence case, *Holmes v. Judge*, supra.

In view of the foregoing unequivocal pronouncements of this Court, I cannot agree with the majority that "we have concluded from the more recent cases and from the clear weight of authority that the relevance of this ingredient [uncertainty and dispute] is settled in our law." None of the cases cited by the majority in support of that statement do in fact so hold.[1]

The majority opinion in the face of 80 years of cases to the contrary also places the burden of proof that an uncertainty or dispute once existed upon the party relying upon the old established boundary. By so doing, one of the foundations of the doctrine is destroyed, viz., that the law *implies* that the landowners were once uncertain or in dispute and the boundary was marked on the ground in settlement. *Holmes v. Judge*, supra. This implication is drawn because due to the passage of time, there is often little or no evidence available as to the erection of the boundary marker. Without being able to rely on the implication, the doctrine of boundary by acquiescence cannot continue to exist as a workable and viable doctrine. Our cases have recognized that lack of uncertainty or dispute can be raised as a *defense* against the doctrine of boundary by acquiescence by the person assailing the old boundary. *Wright v. Clissold*, Utah, 521 P.2d 1224 (1974). *Motzkus v. Carroll*, supra, and *Universal Investment Corp. v. Kingsbury*, 26 Utah 2d 35, 484 P.2d 173 (1971), properly held that like other defenses the burden of proof is upon the person asserting the defense. We explained in our opinion in *Wright v. Clissold*, supra, that once the four elements of boundary by acquiescence (named above) are established, the Court is required to presume the existence of a binding agreement unless the party who assails it proves by competent evidence that there was actually no agreement between the adjoining land owners or there could not have been a proper agreement. Said the Court:

---

1. The cases cited by the majority make only the briefest mention of uncertainty and dispute; none of them hold that the party advocating boundary by acquiescence must prove as an element of his cause of action that the fence, etc. was erected because of uncertainty or dispute by the adjoining land owners. For example, in *Madsen v. Clegg*, Utah, 639 P.2d 726 (1981), *Glenn v. Whitney*, 116 Utah 267, 209 P.2d 257 (1949), *Homeowners Loan Corp. v. Dudley*, 105 Utah 208, 141 P.2d 160 (1943), and *Peterson v. Johnson*, 84 Utah 89, 34 P.2d 697 (1934) it appears to this writer that uncertainty and dispute was mentioned as an element of an express parol agreement; most of those cases cite *Tripp v. Bagley*, supra, which gives credence to my interpretation. In two other cases cited by the majority, *Wright v. Clissold*, Utah, 521 P.2d 1224 (1974), and *Universal Investment Corp. v. Kingsbury*, 26 Utah 2d 35, 484 P.2d 173 (1971), it was stated that lack of any uncertainty or dispute at the time the fence was erected could be shown as a *defense* by the party resisting boundary by acquiescence. In *Leon v. Dansie*, Utah, 639 P.2d 730 (1981), "dispute" was mentioned not as a requirement but "that there had been no dispute *as to record title* [not as to the location of the boundary] at any time over the years." In most of the above cases the mention of uncertainty and dispute was dicta since the case was decided on other grounds. For example, in *Leon v. Dansie, Wright v. Clissold* and *Glen v. Whitney*, the fence was shown to have been erected not as a boundary but simply to contain livestock. Similarly, in *Glenn v. Whitney*, the person erecting the fence did not own land on either side of it; in *Homeowners Loan Corp. v. Dudley* the same person owned the land on both sides of the fence and in *Peterson v. Johnson* the land on one side of the fence was in the public domain.

Facts which prove the latter include the following: (1) no parties available to make an agreement, e.g., sole ownership of the property with the existing line which was later transferred in tracts to two or more other persons; (2) the line was set for a purpose other than setting a boundary; (3) *the absence of a dispute or uncertainty in fixing the boundary;* and (4) . . .

I disagree with the majority opinion that some of our cases have placed the burden of proof upon the party relying upon boundary by acquiescence. My reading of the cases cited by the majority indicates that who has the burden of proof was not an issue in any one of them, and I consider the incomplete statements in those cases upon which the majority relies to be dicta as far as burden of proof is concerned. On the other hand, in *Motzkus v. Carroll,* supra, burden of proof was a vital issue and it was there held that the party relying upon the old boundary fence is not required to produce evidence that the location of the true boundary line was ever unknown, uncertain or in dispute.

I dissent from the adoption of the rule proposed by the majority in Part II that:

[T]he property line shown on the record title cannot be displaced by another boundary unless it is shown that during the period of acquiescence there was some objectively measurable circumstance in the record title or in the reasonably available survey information (or other technique by which record title information was located on the ground) that would have prevented a landowner as a practical matter from being reasonably certain about the true location of the boundary. By the same token a claimant cannot assert boundary by acquiescence if he or his predecessors in title had reason to know the true location of the boundary during the period of acquiescence.

I am in accord with the second sentence. The instant case provides an illustration of that rule, viz., during the period of acquiescence, Bigelow and Cluff had access to a survey which indicated that they did not own to the fence to which they claim. However, the first sentence quoted above seems to be out of harmony with the second sentence. It seems to require proof of a negative, i.e., proof by the person relying on boundary by acquiescence that he and his predecessors were prevented for some reason from having a survey made which would have determined the location of the true line. So far as this writer knows only the lack of money could really keep any land owner from having a survey made. Is that now going to be a vital and valid inquiry by the Court in future boundary cases?

I believe that a rule which would serve us better and which would be workable might be simply stated as follows:

A claimant cannot assert boundary by acquiescence if he or his predecessors in title during the period of acquiescence had reason to know that the boundary acquiesced in was not on the true line. This "reason to know" could come about because of information contained in the record title or in existing survey information or information from other sources which would put a reasonable man on notice that the boundary acquiesced in was not on the true line.

Since the reasonable man standard is used in other areas of the law I would hope that it would work well here. It would provide courts with the basis for refusing to apply boundary by acquiescence where the discrepancy was apparent and the acquiescence was blindly indulged in. On the other hand, we must not expect too much from the rule since being familiar with the legal description of one's property and locating that description on the land are two entirely different things. That is why surveys are made. However, the rule would serve well in instances like *Tripp v. Bagley,* supra, where an old fence line had several angle turns in it whereas the true line was straight north and south along the section line; and in *Madsen v. Clegg,* supra, where the boundary fence ran on a straight line, whereas the deed lines of both parties had right-angle turns in them. In both cases

the landowners had reason to know that the fence was not on the true line.

Part III of the majority opinion ends with the observation that because the property involved in this case is in the city of Provo survey information is readily available and it is reasonable for the law to require the parties to locate their property lines on the ground by means of a survey. It appears to me that this statement is out of harmony with earlier statements in the opinion which indicated that the Court should look at the situation as of when the acquiescence began to determine whether it was feasible for a survey to have been made— not 20 years later when this litigation was commenced.

In conclusion, I am concerned that the rules laid down by the majority are unclear and unworkable as I understand them. The doctrine of boundary by acquiescence has a proper place in our jurisprudence and in my opinion has served well the public policy which brought it into existence in the first place. It has provided a fair basis for settling disputes over often insignificant amounts of land and has discouraged countless property owners from feuding with their neighbors when a recent survey conflicts with long recognized lines. Everything the majority argues and now espouses was considered and rejected by this Court in *Holmes v. Judge*, supra, when Justice Frick wrote:

> While the interests of society require that the title to real estate shall not be transferred from the owner for slight cause, or otherwise than by law, these same interests demand that there shall be stability in boundaries, and that, where parties have for a long term of years acquiesced in a certain line between their own and their neighbor's property, they will not thereafter be permitted to say that what they permitted to appear as being established by and with their consent and agreement was in fact false.

For nearly 80 years we have followed that philosophy. But today the majority opinion opens the way for any property owner in this state to have now his property surveyed (or resurveyed) and gain possession of every inch contained in his legal description. Old surveys and boundaries built in reliance thereon will be meaningless. I believe that the majority opinion is a step backward in achieving stability of boundaries in this state.

## APPENDIX

1. *Moyer v. Langton*, 37 Utah 9, 106 P. 508 (1910).
2. *Young v. Hyland*, 37 Utah 229, 108 P. 1124 (1910).
3. *Farr Development Co. v. Thomas*, 41 Utah 1, 122 P. 906 (1912).
4. *Binford v. Eccles*, 41 Utah 453, 126 P. 333 (1912).
5. *Christensen v. Beutler*, 42 Utah 392, 131 P. 666 (1913).
6. *Tanner v. Stratton*, 44 Utah 253, 139 P. 940 (1914).
7. *Warren v. Mazzuchi*, 45 Utah 612, 148 P. 360 (1915).
8. *Bartholomew v. Pickett*, 51 Utah 312, 170 P. 65 (1917).
9. *Van Cott v. Casper*, 53 Utah 161, 176 P. 849 (1918).
10. *Davis v. Lynham*, 67 Utah 283, 247 P. 294 (1926).
11. *Willie v. Local Realty Co.*, 110 Utah 523, 175 P.2d 718 (1946).
12. *Dragos v. Russell*, 120 Utah 626, 237 P.2d 831 (1951).
13. *Ekberg v. Bates*, 121 Utah 123, 239 P.2d 205 (1951).
14. *Blanchard v. Smith*, 123 Utah 119, 255 P.2d 729 (1953).
15. *Jensen v. Bartlett*, 4 Utah 2d 58, 286 P.2d 804 (1955).
16. *Provonsha v. Pitman*, 6 Utah 2d 26, 305 P.2d 486 (1957).
17. *Motzkus v. Carroll*, 7 Utah 2d 237, 322 P.2d 391 (1958).
18. *Harding v. Allen*, 10 Utah 2d 370, 353 P.2d 911 (1960).
19. *Johnson Real Estate Co. v. Nielson*, 10 Utah 2d 380, 353 P.2d 918 (1960).
20. *Nunley v. Walker*, 13 Utah 2d 105, 369 P.2d 117 (1962).

21. *King v. Fronk,* 14 Utah 2d 135, 378 P.2d 893 (1963).

22. *Johnson v. Sessions,* 25 Utah 2d 133, 477 P.2d 788 (1970).

23. *Universal Investment Corp. v. Kingsbury,* 26 Utah 2d 35, 484 P.2d 173 (1971).

24. *Lane v. Walker,* 29 Utah 2d 119, 505 P.2d 1199 (1973).

25. *Baum v. Defa,* Utah, 525 P.2d 725 (1974).

26. *Brown v. Peterson Development Co.,* Utah, 622 P.2d 1175 (1980).