Chad **RODERICK** and Roma Durfey Roderick, husband and wife, Plaintiffs and Respondents,

v.

Orlo **DURFEY** and Ellen Durfey, husband and wife, Defendants and Appellants.

No. 860123–CA.

Court of Appeals of Utah.

Dec. 15, 1987.

Marcus Taylor, Labrum & Taylor, Richfield, for defendants and appellants.

Ken Chamberlain, Olsen & Chamberlain, Richfield, for plaintiffs and respondents.

Before BENCH, ORME and DAVIDSON, JJ.

## OPINION

DAVIDSON, Judge:

Defendants seek reversal of a Sixth District Court judgment which quieted title to a disputed parcel of land in plaintiffs on the theory of boundary by acquiescence. We reverse.

Plaintiff wife is the daughter of Golden Durfey (Golden) who is plaintiffs' predecessor in interest in the disputed parcel. Golden and Orlo Durfey (Orlo) are brothers. Theresa, their mother, is the predecessor in interest of both brothers. In 1922, the mother conveyed a portion of her property to Wayne County, Utah for a road right-of-way, all of which was located in the SW ¼ of the NW ¼ of Section 1, T. 30 S., R. 7 E., Salt Lake Base and Meridian. In 1949, Theresa conveyed other property, some of which included the SW ¼ of the NW ¼ of Section 1, to Golden and Orlo as tenants in common. In 1964, the brothers exchanged deeds in which they divided the property conveyed to them by their mother. The deed to Orlo conveyed title to the SW ¼ of the NW ¼ of Section 1. Wayne County subsequently conveyed the road right-of-way back to Orlo and his wife thus giving them title to the entirety of the SW ¼ of the quarter section at issue.

Defendants occupy a home in the above described property, just to the east of the boundary between it and Section 2. For a number of years, Golden occupied adjacent property in Section 2 which was later conveyed to plaintiffs.

The issue in this case is whether a fence of ancient origin located on the property conveyed to Orlo is the boundary between the adjacent properties of the parties. The fence was in existence in 1919 when Golden and the Durfey family moved into the area. It roughly paralleled the east-west boundary between the brothers' holdings. The disputed area between the fence and the boundary between Sections 1 and 2 to the west consists of approximately .79 acre; this property having been utilized by both brothers at times.

In 1983, Orlo removed the fence to make sufficient room to rebuild livestock corrals. A survey performed during that year revealed a portion of Golden's home was located on Orlo's deeded property as was the fence. Plaintiffs filed their action to quiet title to the property west of the fence but within Orlo's deeded boundaries and to establish the fence as the boundary between the properties under the theory of boundary by acquiescence.

In its conclusion of law, the trial court stated that plaintiffs were entitled to judgment quieting title to the disputed parcel in them. The appropriate standard of review indicates that "we accord conclusions of law no particular deference, but review them for correctness." *Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985). The Utah Supreme Court set down the case law relative to boundary by acquiescence in *Halladay v. Cluff*, 685 P.2d 500 (Utah 1984). Writing for the majority, Justice Oaks reviewed previous decisions and acknowledged that boundary by acquiescence was an exception to the law giving precedence to record title. He also stated that the following applied in such cases:

Under the rule as we have defined it here, the property line shown on the record title cannot be displaced by another boundary unless it is shown that during the period of acquiescence there was some objectively measurable circumstance in the record title or in the reasonably available survey information (or other technique by which record title information was located on the ground) that would have prevented a landowner, as a practical matter, from being reasonably certain about the true location of the boundary. By the same token, a claimant cannot assert boundary by acquiescence if he or his predecessors in title had reason to know the true location of the boundary during the period of acquiescence.

*Id.* at 505.

Justice Oaks continued by stating "Boundary by acquiescence remains a via-

ble means of establishing a boundary where there is objective uncertainty in the location of the true boundary that cannot reasonably be resolved by reference to the record title and by use of reasonably available survey information." *Id.*

A review of the conveyances involved in establishing record title shows that Theresa Durfey's contract with her two sons relative to the sale and purchase of all the property was merged into the warranty deed she filed in 1951. That *deed* simply conveys the property to Golden and Orlo as tenants in common without delineating which son was to possess a specific parcel of the land. It was not until the brothers exchanged deeds in 1964 that Orlo and his wife were established as the record title owners of the SW ¼ of the NW ¼ of Section 1. Therefore, the doctrine of merger prohibits us from considering any intent Theresa might have had as to potential boundaries. *See Dobrusky v. Isbell,* 740 P.2d 1325 (Utah 1987).

Our analysis centers on whether or not objective uncertainty exists as to the true location of the boundary. If there is a clear record title supported by survey information or if the claimant has reason to know the true boundary, the claim of boundary by acquiescence must fail. Here, the claim fails under both tests.

Plaintiffs' brief states the property at issue is "in one of the remotest areas of Utah" and that it is located "in the frontier extremity of Wayne County" and not now "close to the resources or activities of a surveyor." However, plaintiffs' second witness at trial was both a licensed civil engineer and surveyor who surveyed the property in 1983. The witness testified that, in making the survey, he used the field notes from previous surveys conducted in the area and maintained by the Bureau of Land Management.[1] Although plaintiffs' counsel established that the witness had some difficulty in finding a specific section corner, cross examination re-

vealed that the survey found the NE corner of Section 1 and the monument locating the corner common to Sections 1, 2, 11 and 12. Using this original information from a survey conducted in the late nineteenth century, the witness completed his work. Also on cross examination, the surveyor admitted that it was his judgment that he had surveyed the section line between Sections 1 and 2. It is difficult to claim that there was any objective uncertainty as to the true boundary between the properties in view of the survey information in existence for nearly a century and known to the parties.

Golden's testimony shows that he knew the boundary was the section line and that the disputed fence served another function. He testified that a fence had never been constructed along the section line, that there had been no dispute or argument with Orlo concerning the fence, and that the fence was utilized to "keep the livestock out." The meaning of Golden's testimony, that there was no dispute with Orlo concerning the fence, was clarified by the following exchange found in the trial transcript:

THE COURT: Why don't you [defendants' counsel] ask him [Orlo] the next question that really gets to the meat of the case? Was that fenceline the boundary at the time they divided?

Q: [by defendants' counsel]: Okeh [sic]. Answer that question.

A: [by Orlo]: No.

Q: Well, when you and Golden divided that property, were you intending to get all of the property east of the section line?

A: Just the way the deeds [1964, between the brothers] read, yes.

This meaning was not rebutted by plaintiffs.

The deeded boundary line here is a section line running straight north and south. The disputed fence line, however, is not

---

1. Testimony establishes that at least four surveys of the section corners have been made. The first was made in 1891. Sometime after 1949, another survey was made in the immediate area. At a later date, Golden and another brother caused a survey to be performed which included the section line between the properties. The latest survey was made in 1983.

straight throughout its length but contains some sharp angles. In *Tripp v. Bagley,* 74 Utah 57, 276 P. 912 (1928), the Utah Supreme Court considered that "jogs" in a fence were instrumental in the parties' belief that the fence "could not be along the true boundary line" when a subsequent survey established the boundaries as straight lines. *Id.* at 917. In *Madsen v. Clegg,* 639 P.2d 726 (Utah 1981), the Court reviewed a quiet title action in which the property description contained a substantial jog but the fence line was straight. Because the deeds to the parties' predecessors in interest from a common grantor contained the jog, the Court considered this as indicative of no initial uncertainty concerning the ownership of the property. *Id.* at 729. From this we conclude that if the boundaries delineated in the deeds and the fence lines at issue have obviously different physical configurations, the parties should be on notice that the fence is likely not the true boundary and a showing of objective uncertainty would be difficult.

On the facts established at trial there was no objective uncertainty as to the true boundary of this property. Therefore, the doctrine of boundary by acquiescence has no application. The boundary as described in the deeds must control and title is quieted in defendants. The conclusion of law is in error.

We reverse and remand to the trial court for an entry of judgment in accordance with this opinion. Costs against plaintiffs.

BENCH and ORME, JJ., concur.